[Pope v. The State.]

# Pope v. The State.

## Murder.

(Decided May 12, 1910.    Rehearing denied June 30, 1910.
53 South. 292.)

1. *Trial; Evidence; Objection; Necessity.*—Where objection is not interposed to the question when put to the witness, the court will not be put in error for declining to exclude the answer.

2. *Homicide; Evidence; Circumstances.*—Where the theory of the state was that the person committing the murder was the same man who stole the cotton seed of the deceased, evidence of defendant's inquiries and efforts to procure cotton seed the day previous to the homicide was admissible.

3. *Same.*—Where the theory of the state was that the defendant was the same person that on the night of the homicide stole the cotton seed of the deceased from his mill and the defense was that the defendant went to deceased's mill previous to that time merely to get meal, it was competent for the state to show that the defendant could have gotten meal at a mill closer to his home as tending to show that the defendant went to deceased's mill for the purpose of inspecting the surroundings as well as for meal.

4. *Same.*—Where the state's theory was that the defendant was the person that burglarized the mill of the deceased on the night of the homicide, and it being also shown that the mill contained sorghum seed as well, and it appeared that the burglar had been traced in a certain direction, it was competent to show that a sack of sorghum seed was found by the side of the road in that direction.

5. *Same.*—Where the state's theory was that the murderer was the person that burglarized the mill of the deceased on the night of the homicide, and it appeared that the witness had traced the burglar's tracks near to defendant's house, it was competent for such witness to state that he did not know that the defendant was suspected of having killed the deceased, since it was for the jury to determine whether his tracing the tracks near the defendant's house was influenced or not by his knowledge of whether or not defendant was suspected of the homicide.

6. *Same.*—It was competent to show that certain incriminating buckles and buttons were found under a pot in defendant's yard where a fire had been made, the prosecution being for murder.

7. *Same.*—Where the contention of the state was that the murderer was the person who burglarized the mill of the deceased, and that the defendant persuaded the boy who usually slept at the mill to sleep elsewhere that night, it was not competent for the defendant to testify that he had heard that the boy had killed a snake and that he had gone to the mill to see it, since the issue was not wheth-

3—168

er he went there to induce the boy to stay away but whether he tried to induce him to do so after he got there.

8. *Evidence; Immateriality.*—It was not competent for a witness to state what the deputy sheriff said to another party about telling him a lie and putting him in jail, as it was not made to appear that these remarks applied to the witness or could have influenced his testimony, and the testimony was offered before the deputy sheriff and the other party had testified.

9. *Same; Improperly Obtained.*—The fact that the officer who searched the defendant's premises and found certain shoes, did not have a search warrant, did not render evidence as to the finding of the shoes inadmissible.

10. *Charge of Court; Singling Out Facts.*—A charge instructing the jury that it was their duty to contrast the manner and demeanor of defendant while testifying with that of the state's witnesses, was properly refused as singling out and giving undue prominence to one feature of the testimony.

11. *Same; Argumentative Instructions.*—A charge asserting that the jury had a right in considering the evidence to take in consideration the traits and peculiarities of the white man and the negro man, but otherwise they must not let their verdict be influenced by the fact that the deceased was a white man and the accused a negro, was argumentative, and gave undue prominence to certain facts.

12. *Same; Reasonable Doubt.*—A charge asserting that if the jury have a reasonable doubt as to the existence of a material link in the state's chain of evidence necessary to establish its theory then the defendant must be acquitted, was properly refused since the reference to links and chains was misleading and cases should be tried on the facts and not on theory.

13. *Same.*—A charge asserting that the defendant should not be convicted simply because the jury believed beyond a reasonable doubt, the truth of certain incriminating facts, but that they must believe beyond a reasonable doubt that these facts establish defendant's guilt, was properly refused as argumentative if not otherwise bad.

14. *Witnesses; Competency.*—While an officer in charge of a jury ought not to be a witness, yet the fact that he has charge of the jury does not render him an incompetent witness.

15. *Same; Witness Corroborating Himself.*—Where the prosecution was for murder and the state's theory was that the murderer was the person that stole cotton seed from the deceased's mill on the night of the homicide, and the witness had previously testified that the defendant had told him to send for cotton seed the next morning he could not corroborate his testimony by showing by himself that he sent for the seed as instructed.

16. *Same.*—A witness cannot corroborate himself, or fortify his testimony by proving his acts and declarations, as a general rule.

17. *Appeal and Error; Harmless Error; Evidence.*—Where the prosecution was for murder and the state's contention was that the defendant was the person who robbed deceased's mill of cotton seed on the night of the homicide, and a witness testified that the de-

fendant told him to send for some seed the next morning, it was error to reversal to permit such witness to testify that he sent for such seed as instructed, and such error is not cured by the provisions of section 6264, Code 1907, since the court cannot say what effect the admission of such testimony had upon the verdict.

APPEAL from Anniston City Court.

Heard before Hon. THOMAS W. COLEMAN, JR.

Ervin Pope was convicted of murder in the first degree, and he appeals. Reversed and remanded upon a rehearing.

Pope was charged with the murder of James McClerkin, whose body was found early on the morning of the 20th, near a public road in Oxford, with head battered and crushed. Bloody stones and sticks were found thereabout. It was proven that McClerkin heard someone robbing his ginhouse of cotton seed during the night, and had gone in pursuit of the robber when he was killed. It appears that Pope owned a farm which was rented to a number of tenants. This farm was about two miles and a half east of the house where Pope lived, and Pope's house was about two miles and a half northeast of McClerkin's mill. Near this mill was a ginhouse in which cotton seed was stored. McClerkin lived in a house which was nearer the gin than the mill. Bradford, a boy, slept in the mill. The state's theory is that on Monday morning Pope was in need of cotton seed for his farm, and planned to steal it from McClerkin's ginhouse. That afternoon he went to the place for the purpose of inducing Alonzo Bradford not to sleep in the mill that night, and then returned home. After dark, he went to his farm for a mule and wagon, drove to the ginhouse, and began to load his wagon with cotton seed. McClerkin was awakened by the noise, and struck a light to dress, by which he frightened Pope away. As soon as he was dressed, McClerkin went in pursuit of the robber, overtook him at Body's

[Pope v. The State.]

house, which was between the ginhouse and where Pope lived, and was there murdered by Pope. Pope then drove home, and burned under his wash pot his overalls, which were stained with McClerkin's blood. Shoes were found in defendant's barn shortly after the killing, which the testimony tended to show bore evidence of bloodstains. About the amount of cotton seed stolen from McClerkin's gin was found a short distance from where McClerkin was murdered, and from the point where the testimony tended to show McClerkin was begging Pope not to kill him.

The following charges were refused to the defendant:

"(8) The court charges the jury that it is their duty to contrast the manner and demeanor of the witnesses for Pope with the manner and demeanor of the state's witnesses; and you must apply this test also to the testimony of Pope as a witness for himself.

"(9) The court charges the jury that they have a right in considering the evidence to take into consideration the traits, characteristics, and peculiarities of the white man and the negro man, but outside of that they must not let their verdict be influenced in the slightest degree by the fact that the deceased was a white man and the accused a negro.

"(10) The court charges the jury that this case rests entirely on circumstantial evidence; that it is their duty to carefully and seriously consider every material point in the state's theory; that if any one of them entertains a reasonable doubt as to the existence of any link in the state's chain of evidence, and that link is a necessary one to the remainder of the state's theory, you cannot find the defendant guilty."

"(13) The court charges the jury that they cannot find the defendant guilty simply because they believe beyond a reasonable doubt that Pope needed cotton seed

and promised some one to furnish it Tuesday, and that
he told Alonzo Bradford not to stay in the mill, and
that Body heard the name Ervin called by McClerkin
at the time of his death, and that Dodgen tracked hoof-
prints like those made by Pope's mule to a point close
to Pope's house, and that cotton seed was found in
Bradford's toolhouse, and that buckles and buttons
were found under Pope's barn, and that he addressed
Eason as McClerkin; but that even though you believe
all these facts beyond a reasonable doubt, in order to
convict the defendant, you must further believe beyond
a reasonable doubt that these circumstances establish
the fact that Ervin Pope killed James McClerkin."

T. C. SENSABAUGH, and NIEL P. STERNE, for appel-
lant. The court erred in refusing the defendant the af-
firmative charge.—*Green v. The State*, 68 Ala. 539; *Ex
parte Riley*, 94 Ala. 84; *State v. Couper*, 49 Pac. 959.
The court erred in refusing to exclude the statement of
the witness Williams that the shoes appeared to have
been scraped.—*Reeves v. The State*, 96 Ala. 33; *Gassen-
heimer v. The State*, 52 Ala. 313; 117 Mass. 122; 103
Mo. 203. The court erred in admitting testimony that
the defendant was attempting to borrow cotton seed on
the day before the homicide.—*Brewer v. Watson*, 65
Ala. 88; *Gassenheimer v. State supra; Commissioners v.
Jeffries*, 7 Ala. 548; *Rodgers v. The State*, 62 Ala. 170.
The court erred in refusing to admit the statement of
the deputy sheriff to the witness.—*Levison v. The State*,
54 Ala. 520; *Wilkerson v. The State*, 37 So. 265; *Clif-
ton v. The State*, 73 Ala. 473; *Beal v. The State*, 138
Ala. 94; *Prince v. The State*, 100 Ala. 144. The fact
that there was a mill nearer the defendant and the fact
of the finding of the sorghum seed were entirely irrele-
vant to any issue in the case. The court erred in admit-

ting the testimony that the witness who was tracking near the defendant's house did not know that the defendant was accused of the crime.—*Mobile County v. Little*, 108 Ala. 406; *McDonald v. Jacobs*, 77 Ala. 524; *Ellis v. The State*, 105 Ala. 72; *Ball v. Farley*, 81 Ala. 288. The court erred in permitting the officer in charge of the jury to testify.—*Blaine v. Chambers*, 1 S. & R. 169; *Ex parte Carter*, 1 Phila. R. 507. A witness cannot testify as to his uncommunicated motives or intention, but may testify to facts attending his actions explanatory thereof.—*Richardson v. Stringfellow*, 100 Ala. 416; *Brewer v. Watson, supra.* Any fact which tends to show the real motive of the accused is relevant evidence whether offered in prosecution or defense.— *Flannagan v. The State*, 46 Ala. 703. The court erred in refusing charge 8.—*Storey v. The State*, 71 Ala. 329; Sec. 7, Art. 1, Const. 1901; *Dolan v. The State*, 81 Ala. 11. Charge 10 should have been given.—*Jones v. The State*, 107 Ala. 93. Counsel discuss other assignments of error not necessary to be here set out.

ALEXANDER M. GARBER, Attorney General, and KNOX, ACKER, DIXON & BLACKMON, for the State. The defendant was certainly not entitled to the affirmative charge. The witness was properly allowed to state that the shoes appeared to have been scraped.—*Orr v. The State*, 117 Ala. 69. Besides, the question was not objected to and the court will not be put in error for failing to exclude the answer.—*Downey v. The State*, 115 Ala. 111. The same observation applies to the next two assignments of error. Counsel discuss the other assignments of error as to evidence, but without citation of authority. They insist that the court properly refused the charges requested, and cite.—*Hussey v. The State*, 86 Ala. 34.

ANDERSON, J.—The answer of the witness Williams as to the condition and appearance of the shoes, when he examined them at the coroner's inquest, was responsive to the question asked by the state and to which there was no objection. The defendant, not having objected to the question, could not put the trial court in error for failing to exclude the answer.—*Downey v. State*, 115 Ala. 108, 22 South. 479. Nor must we be understood as holding that the evidence was incompetent had the question been objected to by the defendant.—*Orr v. State*, 117 Ala. 69, 23 South. 696.

There was no error in permitting the state to show the defendant's inquiries and efforts to procure cotton seed the day previous to the homicide, as the state's theory was that the man who killed the deceased was the one who burglarized the building to get cotton seed.

There was no error in not letting the defendant prove by Amos Montgomery what the deputy sheriff Eason said to Robert Smart about telling him a lie and putting him in jail. It does not appear that these remarks applied to Montgomery, or could have influenced his testimony, and it was not reoffered after Smart and Eason had testified. It was not competent when excluded, and, if it became relevant after Eason and Amos Montgomery testified, in order to put the trial court in error, it should have been subsequently offered.

There was no error in permitting the state to show that there was a mill at Oxford and much nearer the defendant than the one in question. The state's theory was that he did not go to the decedent's mill solely to get meal, but to inspect and clear the way to go there that night for cotton seed. And the fact that he could have gotten the meal much nearer his home was a circumstance for the jury to determine whether he went

to the mill in question solely to get meal or to inspect conditions and surroundings as well.

There was no error in permitting the witness Dodgen to testify that he found a sack of sorghum seed by the side of the road on College Hill. The burglar had been traced in this direction, and there was proof that the building burglarized contained cotton seed, sorghum seed, and feed. Miss Rachel McClerkin's testimony, page 15 of the record. Nor was there error in permitting Dodgen to testify that he did not know that defendant was suspected of killing the deceased. It was a circumstance to be considered by the jury as to whether or not these were facts to induce or influence the witness in tracing the tracks to near the defendant's house.

The fact that the officer who searched the defendant's premises and found the shoes had no search warrant did not render the evidence inadmissible.—*Shields v. State,* 104 Ala. 35, 16 South. 85, 53 Am. St. Rep. 17; *Scott v. State,* 113 Ala. 64, 21 South. 425; *Bacon v. United States,* 97 Fed. 35, 38 C. C. A. 37; 25 Am. & Eng. Encyc. Law, 154.

We do not think that the deputy sheriff, Rowland, was rendered incompetent to testify because at recess or other times he may have had charge of the jury. We think it would be better where an officer is a witness in the case, such as the present one, that he not be put in charge of the jury, but this fact does not render him incompetent as a witness.

There was no error in permitting the witness Murphy to testify where he got the buckles and buttons. He got them from John Draper, who had found them under a pot in defendant's yard. There was proof that a fire was made under said pot early that morning and, there was a slight inference that the garment from which the

buttons and buckles came was burned under said pot to destroy signs of an incriminating character.

There was no error in not permitting the defendant to testify that Dodgen told him that Alonzo Bradford had killed a snake. The appellant insists that, while the defendant could not testify to his motive or purpose in going where Bradford was, the fact that he had been told that Bradford had killed a rattle snake was a question for the jury to determine in ascertaining whether he sought Bradford out for the purpose of persuading him to stay away from the building at night or was caused to stop out of curiosity to see the dead snake. We do not think that the fact that defendant stopped to talk with Bradford was of itself a circumstance against the defendant, or showed that he sought him out or went out of his way to see him. The only purpose of the evidence shown was an effort on defendant's part, after he stopped, to get Bradford to leave at night, and there was no effort to show that he sought him for that purpose. The proof shows that Bradford was right on the road where defendant was passing, that he saw a wagon coming, and waited there to get on it, and in the meantime got in it. The proof shows that he would have presently passed Bradford, whether he knew about the snake or not, and that he stopped there to wait for a wagon he saw coming and got on it when it got up to them. He did not go out of his way to find Bradford, would have passed right by him anyhow, and defendant says: "I stopped there and waited for a wagon."

Charge 8, requested by the defendant, was properly refused. If not otherwise bad, it singles out and gives undue prominence to the manner and demeanor of Pope, the defendant.—*Stone v. State*, 105 Ala. 60, 17 South. 114, 1 Mayfield's Digest, p. 174.

Charge 9, requested by the defendant, was properly refused. It was argumentative and gave undue prominence to certain facts.—*Hussey v. State,* 86 Ala. 34, 5 South 484. This charge is unlike the oral charge approved by this court in the case of *Dolan v. State,* 81 Ala. 11, 1 South. 707, and which was given by the court to counteract argument of counsel upon the question of color.

Charge 10, requested by the defendant, was properly refused. This court has repeatedly condemned charges as misleading and confusing which referred to links and chains in the testimony.—*Spraggins v. State,* 139 Ala. 93, 35 South. 1000; *Vaughn v. State,* 130 Ala. 18, 30 South. 669; *Tompkins v. State,* 32 Ala. 569; *Wharton v. State,* 73 Ala. 367; *Grant v. State,* 97 Ala. 35, 11 South. 915. Charge 1, approved in the case of *Jones v. State,* 107 Ala. 93, 18 South. 237, is unlike the present charge. It predicated an acquittal upon a reasonable doubt as to an essential ingredient of the offense. The present charge forbids a conviction, if there is a material missing link necessary to the state's theory, and not a reasonable doubt as to an essential element or constituent of the offense. Moreover, cases should be tried on facts, and not theories.

Charge 13, requested by the defendant, was properly refused. If not otherwise bad, it was argumentative.

It is true this was a case of circumstantial evidence, but we think the state made out a case to be considered by the jury, and the general charge, requested by the defendant, was therefore properly refused.

The action of the trial court in refusing a new trial is not reviewable in this court.

While we have discussed only the points made in brief of counsel, we are not unmindful of our duty, under the statute, to consider every point disclosed by the record,

and have considered each and every one, and find that the action of the trial court was free from reversible error. The judgment of the city court is affirmed.

Affirmed.

DOWDELL, C. J., and McCLELLAN and SAYRE, JJ., concur.

## UPON REHEARING.

As a general rule a witness cannot corroborate himself or fortify his testimony by proving his declaration and acts.—*Childs v. State,* 55 Ala. 25; *Nichols v. Stewart,* 20 Ala. 358; *James v. State,* 115 Ala. 83, 22 South. 565; Jones on Evidence, 869, 870. The fact that Amos Montgomery testified that he sent for the cotton seed Tuesday morning was but permitting him to narrate a fact of his own production and which tended to corroborate his previous statement that defendant told him to send for the seed Tuesday morning. This statement and action of the witness may have had considerable weight with the jury in determining whether or not defendant told said witness to send for the seed. If the fact was a fabrication, the witness could have easily sent or pretended to send for the seed for the purpose of corroborating himself and giving weight to his statement that defendant told him to send for the seed. The evidence did not come within the exception to the rule.—1 Greenleaf on Evidence, 469. The trial court erred in not excluding the statement of Amos Montgomery that he sent for the seed and did not get them. Indeed, the evidence of the other Montgomery as to going for the seed was excluded, and the court should have excluded this also.

We are not able to say that this error comes within the curative influence of section 6264 of the Code of

[Pope v. The State.]

1907, so as to enable us to affirm this case. This statute was construed in the case of *Dennis v. State*. 118 Ala. 72, 23 South. 1002. It was there held that, in order to affirm, the court must be satisfied that the verdict of the jury would not have been different if the charge had been given. We would therefore have to be satisfied that the verdict of the jury in this case would have been different had this evidence been excluded. It is true this case was tried with care, and this is the only reversible error that we have been able to find and which may prima facie appear of little importance; yet this was a case of circumstantial evidence. There was a sharp conflict between the defendant and Amos Montgomery as to whether or not defendant told Montgomery to send for the cotton seed Tuesday, and the fact that Amos sent, if he did so, or said that he sent tended to corroborate him and we cannot affirmatively hold, that the verdict of the jury would have been the same whether they did or did not believe that defendant told Montgomery to send for the seed, or that they were not influenced by this incompetent evidence to the extent of believing that the defendant did tell Montgomery to send for the seed.

The rehearing is granted, and the cause is reversed and remanded.

DOWDELL, C. J., and McCLELLAN and SAYRE, JJ., concur.