(130 So. 70)

## SHAMBERGER v. STATE.
### 2 Div. 964.

Supreme Court of Alabama.

June 19, 1930.

Rehearing Denied Oct. 9, 1930.

Thos. F. Seale, of Livingston, Harwood & McQueen, of Tuscaloosa, William Lindsey and D. M. Boswell, both of Butler, and Martin Miller, of Meridian, Miss., for appellant.

Charlie C. McCall, Atty. Gen., for the State.

SAYRE, J.

■ On defendant's challenge it appeared that one Alexander, called as a juror, was a brother of defendant's deceased wife, and that she had left surviving her a daughter. The rule is that, if the marriage has resulted in issue who is still living, the relationship by affinity continues. 2 Corpus Juris 379. The state's challenge was properly allowed. Code, § 8610, subd. 4.

■ Defendant was indicted, along with two others, for the murder of Berry Brown and was convicted of murder in the second degree. A severance was ordered. James Turner, an old negro, who lived on defendant's place, testified for the state that on February 5, 1929, defendant on trial, Dan Shamberger, and his brother Horace, with threats against his life, commandeered—we are trying to state the matter briefly—him and Morris Chaney, another old negro of the same sort, took them to the site of an old sawmill on the margin of an 1,800-acre swamp, where they 'saw the body of deceased, freshly slain, lying on the ground; that they covered the body with sawdust and little "chunkins"; that in the night of the same day witness and Morris Chaney were required to place the body on a truck and go with it to a tree top, meaning the top of a tree which had fallen or been felled, in that part of the swamp which belonged to defendant and which was "posted," where they deposited the body, covering it with leaves; that on the night of Thursday, the 7th, they (the negroes) were required to assist in the removal of the body to Ticabum creek, about one-half a mile away, into which, with weights attached, it was thrown. The body was recovered, two months later, from the Tombigbee river at a point five or six miles below the mouth of Ticabum.

The state's solicitor, over the objection and exception of defendant, was permitted to ask this witness: "Did you point out to us, Mr. Christopher [a deputy sheriff], and myself, and Clarence Smith and others, the Pole Ford near the sawmill site where you first saw the man dead?" The witness answered in the affirmative. And this question: "Did you point out the sawmill site there?" which was answered affirmatively. And this: "Did or not you point out to Mr. Christopher and myself and Clarence Smith and others the spot where you first covered up the body of Berry Brown?" And the following: "Did you point out to us the point on Ticabum Creek where you and Morris were ordered to lay the body down?" And this: "Did you point out to us the place in the water—I mean Mr. Christopher and myself and others—the place in the water where these three men, Mr. Dan and Mr. Horace and Mr. Grady Inzer, threw the body into the water?" These questions were all answered in the affirmative, and exceptions were in each case duly reserved.

We are constrained to hold that these rulings were error to reverse. In Green v. State, 96 Ala. 29, 11 So. 478, 479, the court said: "A witness cannot corroborate himself by introducing other witnesses to prove that he made the same statement to them to which he deposed, or that he showed other witnesses a spot in regard to which he had testified." That decision, on the point here at issue, was sustained by Childs v. State, 55 Ala. 30. And so in Nichols v. Stewart, 20 Ala. 358; McKelton v. State, 86 Ala. 594, 6 So. 301; Pope v. State, 168 Ala. 43, 53 So. 292; Greenl. on Evidence, § 469.

In view of another trial we add:

■■ The belt and trousers found on the body taken from the river were properly allowed in evidence as illustrating the value of the testimony of witnesses who swore they were the belt and trousers worn by Berry Brown on the day of his disappearance. These articles had long been submerged, but witnesses nevertheless identified them, and, if the jury gave credit to that identification, they went very persuasively to establish the identity of the body on which they were found as the body of Berry Brown and so to prove the corpus delicti. The case here is easily distinguishable from Boyette v. State, 215 Ala. 472, 110 So. 812, and cases in that line. Nor was there error in admitting the weights in evidence. They tended to explain the long submergence of the body in the water of Ticabum and contributed to a just appreciation of the testimony to the effect that the body with weights attached had been thrown into Ticabum.

■ Appellant complains that the state was allowed to examine "witness after witness" in the most minute and grewsome detail as to the condition of the body taken from Tombigbee river April 16, 1929. That body was a repulsive spectacle, no doubt; but its identity was denied, and no testimony as to its condition and the persistence of marks of identification was improperly received.

We find no error in the ruling by which the court admitted to the jury testimony as to various and sundry items of circumstantial evidence tending to corroborate and confirm the story told by Turner and Chaney concerning the time and means by which Berry Brown came to his death and the disposition of his body.

The court, on defendant's request, gave to the jury fifty-eight special charges in writing. These charges, along with the court's oral

charge, adequately covered every point of law involved, and there is no need to examine separately and seriatim the fifty-four charges refused to defendant. It could hardly have been expected that they would in such mass and number contribute to an understanding of the simple questions of law and fact involved in the trial.

For the error noted the judgment of conviction must be reversed and the cause remanded for another trial.

Reversed and remanded.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.