STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. LOUIS FINE, PLAINTIFF IN ERROR.

Argued October 18, 1932—Decided January 31, 1933.

For the plaintiff in error, *Samuel Morris.*

For the state, *Louis A. Repetto,* prosecutor of the pleas.

The opinion of the court was delivered by

PARKER, J. The plaintiff in error was convicted of murder in the first degree. The deceased was a Mrs. Schaaf, in whose house the defendant below had roomed for several months before her death. The defense was insanity. The proof that defendant had done the killing was not seriously controverted, and the defendant was not sworn in his own behalf. It becomes unnecessary therefore to go into any detail touching the proof bearing on the commission of the act, except as incidental to the points of law argued. They may be grouped under three heads: 1. Admission of certain photographs in evidence. 2. Attacks on the judge's charge. 3. Weight of evidence on the issue of insanity.

The evidence showed that the body of the woman was found in a small trunk which was inside of a big trunk, which has been shipped by express from Atlantic City to Philadelphia. The body was absolutely identified, and it was undenied that death had been caused by strangulation, the rope used being around the neck of the victim. A series of photographs showing the trunks and the body was put in evidence over objection and the introduction of these pictures is attacked in several specifications.

An examination of the stenographic transcript, however, shows that the objections to them are not well founded. When the first was offered, counsel said: "I object. I cannot see the purpose. The testimony is that there was a white

woman in there, and they have testimony, I suppose, to identify her. This is simply a gruesome picture that will answer no purpose."

The fact that counsel could not see the purpose naturally does not make the photograph incompetent. We think it was both relevant and competent, as a question of identification and part of the evidence to establish the *corpus delicti*. It is true that there was other testimony as to whose body it was and how death had been caused, but the fact that this evidence was cumulative does not render it incompetent, nor does the fact that it happens to be gruesome and injects an element of horror into the case. *State* v. *Aeschbach,* 107 *N. J. L.* 433, 435. It is now argued that the photographs were incompetent because "not the best evidence," and from the case of *Goldsboro* v. *Central Railroad Co.,* 60 *Id.* 49, a Supreme Court case, counsel quotes the casual observation, that photographs "are never admitted but as secondary evidence." They are not so treated in *Wigm. Ev.,* but are classed under what he calls "non-verbal testimony" like maps or diagrams. Sections 789 *et seq.* It is true, of course, that they must be verified by testimony as correctly depicting the originals that they portray, but it is not suggested that such verification was lacking. Furthermore, and finally, the "best evidence" objection was not made at the trial. Several similar photographs were admitted over the "same objection" and the further objection that they were irrelevant and immaterial. We think they were both relevant and material; and that they were properly admitted.

2. We pass to the attacks on the charge, which are based on the seventeenth and eighteenth assignments of error and causes for reversal. Technically these are utterly futile as specifying any particular part of the charge claimed to be erroneous, and but for the fact that this is a capital case and that we deem it proper, though in nowise obligatory on us, to deal with them *in favorem vitæ,* they would not be considered for a moment. *State* v. *Blaine,* 104 *N. J. L.* 325.

The seventeenth assignment and specification (so we are

informed by the brief) are directed to a passage in the charge which reads as follows:

"And we are dealing in this case, gentlemen, only with the mental state of this defendant at the time this act was committed by him, if it was committed by him, and what his condition was theretofore or his condition has been since, what it may be hereafter, is a matter in which you are not now presently concerned. The law of this state provides for every exigency. If this man was insane and unable to go to trial, the law provides for his protection in that event. If he be rendered insane subsequent to the commission of a crime, the law provides for that event. And if, even after conviction, a man be adjudged insane, it is neither the policy of the law nor the practice of this state to condemn insane persons. The duty is placed squarely, by the policy as established by the legislature, upon the court to see that no insane person shall be put to death."

The claim made by counsel is, in substance, that although evidence had been received by the court, and properly, to show that the defendant had been insane both before and after the commission of the murder, yet this instruction forbade them to consider such evidence at all, and eliminated it even as bearing on the question of his insanity at the time of the killing. But we do not so understand the instruction, and fail to see how the jury could reasonably have so understood it. The point stressed was that only legal insanity at the time of the act, and not insanity before or after it, relieved the perpetrator of responsibility. This is apparent from the context of the charge on this subject. The court began by quoting from the celebrated charge of Chief Justice Hornblower, reported in 21 *N. J. L.* (at *p.* 200), and beginning: "I now come to that part of the cause which constitutes the main part of the defense in this case, namely, insanity." Continuing the quotation, he asked: "Was, then, the prisoner at the bar insane at the time of committing the homicide?" And again (top of page 201): "The simple question for you to decide, gentlemen, is whether the accused at the time of doing the act was conscious that it was an act which he ought

not to do." And again: "If it is your opinion that at the time of the act he was unconscious that he ought not to do it," &c. All this in the precise language of a charge which since 1846 has been a landmark in our criminal law. The trial judge went on to remark that the burden of proving insanity was on the accused: followed this with the passage now challenged as quoted above, and proceeded to a fuller discussion of the burden of proof.

We agree with counsel that evidence of the existence of insanity before and after the crime is relevant to the question of insanity at the time. But no such evidence was excluded, nor did the judge charge that it should be ignored. What he did charge was that on a defense of insanity the test of legal innocence or guilt was the existence or non-existence of insanity at the time of the act, and that insanity at any other time was no defense. The charge may be criticised, perhaps, as omitting to tell the jury that they were at liberty to consider evidence of prior insanity as indicative of insanity at the time. But that relates to matters of evidence, and not to the test of guilt, and therefore was not an essential part of the instructions that were actually given. If counsel wished an instruction on the propriety of considering such evidence, it was his duty to ask for it, and failing such a request, the court was not in error for failing to charge it. The case shows that not one request to charge was submitted, and not one exception, even the general one permitted by statute, was prayed at the end of the charge. Making all due allowance for the unusual privileges allowed the defense by section 136 of the Criminal Procedure act, it may still be said that the silence of counsel in relation to both requests and exceptions, seems to point to satisfaction at the time with the charge as delivered.

The eighteenth specification also fails to specify. However, turning again to the brief, we find that counsel complains that the court in discussing motive, after saying that proof of motive was not essential to a conviction and important mainly in doubtful cases, omitted to say that the commission of a criminal act without apparent motive may be considered

in corroboration of evidence tending to show insanity at the time. Here again there is no challenge to·what the judge said, but to what he did not say; and for reasons just given, we see no error on the part of the court.

Finally, that the verdict was against the weight of evidence. This is argued from the standpoint of insanity alone. There are three specifications cited, the nineteenth, twentieth and twenty-first; but the two latter are attacks on the verdict not authorized in that form by the statute. However, the nineteenth covers the other two, and is in due form.

The defendant did not take the stand. No question is now raised but that he killed the woman whose body was found in the trunk. The point stressed is that he was insane when he did it, and that the jury disregarded the weight of evidence in concluding that he had not been shown to have been legally insane at the time. There is no question but that the burden of proving insanity is on the defendant. The presumption of sanity persists until overcome. *State* v. *Spencer,* 21 *N. J. L.* 196; *Graves* v. *State,* 45 *Id.* 347; *State* v. *Overton,* 85 *Id.* 287 (at *pp.* 294, 295). The question, then, was whether the evidence of the witnesses for the defendant so far outweighed that of the witnesses for the state (the defendant himself not taking the stand), as that this court should be impelled to say that the verdict was the result of mistake, passion, prejudice or partiality. *State* v. *Treficanto,* 106 *Id.* 344. We are clear that the case does not meet that test.

The judgment will be affirmed.

*For affirmance*—TRENCHARD, PARKER, LLOYD, CASE, BODINE, KAYS, WELLS, KERNEY, JJ. 8.

*For reversal*—BROGAN, J. 1.