72 So.2d 296

## HINES v. STATE.

### I Div. 556.

Supreme Court of Alabama.

March 25, 1954.

Rehearing Denied May 13, 1954.

James R. Owen, Bay Minette, for appellant.

Si Garrett, Atty. Gen., Arthur Joe Grant, Asst. Atty. Gen., for the State.

SIMPSON, Justice.

The appeal is from a conviction of murder in the second degree and the imposition of twenty-five years imprisonment in the State penitentiary.

The defendant was charged with the murder of one Lesley Gee, who was last seen on the night of September 5, 1952. What were identified as his decomposed remains were found October 17, 1952, in a wooded area at the rear of defendant's premises about 461 feet from the back door of his house. The skull was in a cleared space (apparently made by vultures and hogs) some distance from the trunk, which was still in its clothing and was suspended on briars and gallberry bushes. Witnesses testified that the clothing containing the trunk of the skeleton was the apparel deceased was wearing on the night of his disappearance. This clothing and other articles of personal property of Gee, such as shoes, a flashlight and hat found at the scene, aided in identifying the remains as those of Lesley Gee.

The Assistant State Toxicologist, Mr. Grubbs, took three photographs the day the body was discovered and these were introduced as State's Exhibits 1, 2 and 3. Exhibit 1 depicted the area where the remains were found, Exhibit 2 showed the skull as located in the clearing when found, and Exhibit 3 showed the assembled skeleton and the shoes and clothing. It is seriously argued that reversible error was committed in allowing the introduction of these photographs.

When the discovery was made the defendant was arrested and later admitted to various witnesses that Gee had visited his home the night of his disappearance (September 5th); that after an argument between Gee and the defendant's wife deceased attacked defendant with a knife and he then shot the deceased with a .22 rifle; that deceased "slumped down" and then ran out the back door and that he had not seen him since. He and his wife testified that they did not know of his body being in the vicinity of their home and had not noticed any disagreeable odor or the flight of any buzzards over the area. Defendant also admitted to witnesses that he went to Pensacola the following day and disposed of the rifle. Bloodstains which the toxicologist testified were human blood were found on the floor of the kitchen where defendant admitted he had shot Gee.

Of course, in every criminal prosecution the State must show beyond a reasonable doubt that a crime has been committed. Winslow v. State, 76 Ala. 42.

And before it will consider who perpetrated the crime, the court must first be convinced, at least prima facie, that an offense has been committed. DeSilvey v. State, 245 Ala. 163, 16 So.2d 183.

Also the corpus delicti must be established before evidence of any confession of the defendant is admissible. Johnson v. State, 142 Ala. 1, 37 So. 937.

These governing rules were complied with in the present case. As has been previously pointed out by this court in many cases, the corpus delicti is a fact, proof of which may be established by circumstantial evidence, and if there is a reasonable inference to prove its existence the court should submit to the jury for consideration the question of the sufficiency and the weight of the evidence tending to support that inference. On the night of the deceased's fatal disappearance, he was seen in close proximity to and going in the direction of the defendant's home by a neighbor who lived about 200 yards away. Defendant's wife testified that the deceased came to their house on the night of his disappearance and of an argument which ensued between the two men when deceased drew his knife on the defendant, at which juncture she ran out of the house. The toxicologist testified that the bloodstains on the floor of the defendant's kitchen, the room in which the difficulty took place, were of the same type blood as that on Gee's shirt which was

found with his remains at the scene of the discovery. This evidence, together with the mysterious disappearance of Gee and the finding of what were identified as his remains in the vicinity of the defendant's home afforded at least an inference that he had met with foul play of some kind which caused his death and sufficiently proved the corpus delicti. DeSilvey v. State, supra. The confession of the defendant, therefore, was admitted without error.

■■■ We are unwilling to pronounce error in the admission in evidence of the photographs. The pertinent rule was thus stated by the court, speaking through the late Mr. Justice Brown, in McKee v. State, 253 Ala. 235, 237–238, 44 So.2d 781, 783:

"* * * the art of photography is generally relied on for depicting the resemblance of persons, objects, things and places and when verified by evidence, extrinsic of the photographs, going to show that they correctly depict the thing or object *at the time they were taken,* photographs are admissible in evidence in a criminal prosecution, if they tend to shed light on, strengthen or illustrate the truth of other testimony offered by the prosecution. * * *

* * * * * *

"Courts and juries cannot be too squeamish about looking at unpleasant things, objects or circumstances in proceedings to enforce the law and especially if truth is on trial. The mere fact that an item of evidence is gruesome or revolting, if it sheds light on, strengthens or gives character to other evidence sustaining the issues in the case, should not exclude it. * * *"

■■■ It seems clear to us that the allowance of the photographs comes well within the rule of the McKee Case and others hereafter cited. Exhibit 1 was merely a picture of the area and Exhibit 2 a depiction of the clearing where the skull was found. The scene of the discovery had been described by witnesses and these two exhibits were but an accurate portrayal

thereof and rendered them admissible. Exhibit 3 was of some relevancy in establishing the corpus delicti and on the question of identification. It was, of course, important that the State establish that an entire human skeleton had been found and that it was the remains of Lesley Gee. Witnesses in their testimony estimated the height and weight of Gee and the toxicologist testified that by certain measurements and scientific formulae it had been possible for him to ascertain from this assembled human skeleton that its height and weight in life was about the same as that of Gee. Exhibit 3 therefore had some probative relevancy in establishing the corpus delicti as well as on the matter of identification. Such evidence manifestly assisted the jury in determining these matters and "the sole question is whether physical evidence will assist and not mislead the jury in understanding the matter before them." 2nd Wharton, Criminal Evidence, p. 1282, § 252. The following cases, among others which could be cited, sustain our conclusion: De-Silvey v. State, supra; Reedy v. State, 246 Ala. 363, 20 So.2d 528; Green v. State, 252 Ala. 513, 41 So.2d 566; Potts v. People, 114 Colo. 253, 158 P.2d 739, 159 A.L.R. 1410; State v. Edwards, 194 S.C. 410, 10 S.E.2d 587; State v. Fine, 110 N.J.L. 67, 164 A. 433; State v. Myers, 7 N.J. 465, 81 A.2d 710, 25 A.L.R.2d 1171; West v. State, Miss., 67 So.2d 366.

■■■ Similar rationale disposes of the objection to the introduction in evidence of the articles of clothing (shirt, overalls and shoes) and personal effects taken from the clothing and the flashlight and hat, all identified as belonging to Lesley Gee and in his possession or worn by him when last seen on the night of September 5th. All these articles were found at the scene and were shown to have been in the same condition when offered as when found. They were therefore admissible. Shamberger v. State, 221 Ala. 538, 130 So. 70; Dennison v. State, 259 Ala. 424, 66 So.2d 552.

■■■ There was likewise no error in admitting in evidence the oral and written admissions or confessions of the defendant. It is, of course, true as argued by learned

counsel, that confessions or extra-judicial admissions against interest are prima facie involuntary and inadmissible and it is the duty of the trial court in the first instance to determine their voluntary character and unless it so appears they should not be admitted. Here, however, the State established by the several witnesses on voir dire that the inculpatory statements of the defendant were voluntary and it then became the duty of the court to admit them. The objection interposed to the introduction of this evidence was that the proper predicate had not been laid and that the court should exclude the jury. However, the proper predicate was laid and it was within the sound discretion of the trial court to determine whether or not the jury should be excluded and we can perceive no abuse of discretion here by his refusal to exclude the jury.

The appellant argues that he was not permitted to cross-examine the witnesses testifying relative to these inculpatory statements nor was he permitted to examine his own witnesses to discredit the voluntary nature of the statements, citing as predicate for error the rule enunciated in Cook v. State, 16 Ala.App. 390, 78 So. 306; Stone v. State, 208 Ala. 50, 93 So. 706. But the defendant made no such offer and merely made the objection noticed above. This right contended for by the defendant must be asserted on voir dire examination of the State's proffered witness and where, as here, the proper predicate was laid for introduction, the statements were properly admitted and such evidence as the defendant might have thereafter introduced to impugn their voluntary character would merely go to the jury on its probative effect. Lockett v. State, 218 Ala. 40(8), 117 So. 457.

The court, consistent with its duty, has carefully considered the entire record and finds no error to reverse.

Affirmed.

LIVINGSTON, C. J., and GOODWYN and MERRILL, JJ., concur.