217 So.2d 90

**William Kyle LIVINGSTON**

v.

**STATE.**

**3 Div. 344.**

Court of Appeals of Alabama.

Nov. 5, 1968.

Rehearing Denied Nov. 26, 1968.

---

1. I rely on appellant's brief for the defendant's testimony, since the State has accepted his Statement of Facts as correct.

580

Elno A. Smith, Jr., Montgomery, for appellant.

MacDonald Gallion, Atty. Gen., and Marlin Mooneyham, Asst. Atty. Gen., for the State.

CATES, Judge.

Livingston was convicted of transporting (Code 1940, T. 29, § 187, the five-gallon law). After adjudging him guilty and exhorting him by way of allocution, the trial judge sentenced Livingston to a term of thirteen months in the penitentiary. Hence he appeals.

## I.

On the night of March 4, 1966, "about first dark," Mr. C. E. Ward, an agent of the ABC Board (T. 29, § 5), was on "still" watch near St. Jude's Hospital, Montgomery. A '65 Dodge went in the hospital parking lot. Then "a couple of minutes" later another car drove in.

The agent went to the second car. The driver and a passenger were sitting on the front seat. The passenger ("Hawkshaw" Davis) had a gallon of corn whiskey on the floor of the car. Livingston was standing beside the driver's side of this same car. David Livingston, the defendant's brother, was the driver.

Mr. Ward went to the '65 Dodge. Parenthetically, at this point, the record shows:

"Q Now it was the Defendant's Sonny Kyle Livingston's car, is that correct?

"A Yes.

"Q What did you find in that car?

"MR. SMITH: I object to that, Your Honor, and I would like to take the witness on Voir Dire outside of the presence of the jury.

"THE COURT: Counsel will approach the Bench.

"*(Off the record discussion between Court and Counsel.)*

"THE COURT: I deny the motion.

"MR. SMITH: Note us an exception, Mr. Reporter.

"THE COURT: Proceed.

"*BY MR. WILLIAM I. HILL: (Continuing)*

"Q Now, tell us, Mr. Ward, what you found in that 1965 Blue Dodge?

"A I found it to be loaded with corn whiskey.

"Q All right, sir, and how much was it?

"A It was one hundred ninety-nine gallons.

"Q One hundred ninety-nine gallons?

"A Yes, sir.

"Q Where was this whiskey?

"A It was in the back seat of the car. The back seat and the trunk.

"Q What kind of containers was it in?

"A It was in plastic one gallon jugs.

"Q It was contained in plastic one gallon jugs and there were one hundred ninety-nine jugs?

"A Yes, sir.

"Q All right, sir. Now, did you examine some of these jugs of whiskey?

"A Yes, sir. I did.

"Q Approximately how many did you examine?

"A Five.

"Q All right, sir, and tell us what in your opinion was in those jugs?

"A It was corn whiskey.

"Q Then, what did you do, Mr. Ward?

"A I inquired about whose car it was and Sonny told me the car belonged to him, and so I told him we were going to have to come down to Headquarters and I called my Supervisor, Mr. Richardson, who was on duty at that time and he met us here at the Sheriff's Department and we discussed it.

"Q You met who?

"A My Supervisor, Richardson.

"Q And then the Defendant, Sonny Kyle Livingston was arrested. Is that right?

"A Yes, sir.

"Q And brought down to—

"MR. SMITH: We object to the leading.

582

"MR. HILL: Where was it he was brought?

"THE WITNESS: He was brought to the Sheriff's Office at the Courthouse here."

On cross, Ward testified in part:

"Q Did you have a warrant at this time?

"A No, sir.

"Q Now, you said that about thirty or forty minutes later two cars pulled in. Is that correct?

"A I would say twenty-five minutes later there was one car that pulled in and in about three or four minutes after that another car pulled in.

"Q Did you see the Defendant driving either one of these automobiles?

"A No, sir. I didn't see him driving them. I couldn't say that he was the one that was driving but I saw the car pull in.

"Q And when you walked over to the car, did you tell the defendants anything about their rights?

"A No, sir. I didn't.

"Q You didn't explain their Constitutional rights to them about the right to have counsel and that they didn't have to make a statement unless they wanted to—none of that?

"A I did not."

On redirect we find:

"Q Now, Mr. Ward, he mentioned Hawkshaw Davis and David Livingston. Now, they were charged with this gallon of moonshine whiskey that was in the automobile, were they not?

"A Yes, sir.

"Q And you never saw them outside of the car the whole time? Is that correct?

"A I saw Davis either getting into or out of the car on the opposite side from the driver.

"Q All right, sir. What was his condition at the time?

"A Normal.

"Q Now you never saw anybody—it was just a matter of seconds though from the time you started up your automobile and then went over there to where they were. Is that correct?

"A I would say forty-five seconds to a minute, sir.

"Q And the only person you saw outside of an automobile the entire time was the Defendant, Sonny Kyle Livingston. Is that correct?

"A The entire time.

"Q All right, sir, and he volunteered to you that it was his whiskey. Is that correct?

"A He stated that the whiskey belonged to him. Yes, sir.

"Q All right. That's all."

On recross:

"Q Now, did you see Mr. Livingston drive any one of those cars on that lot? "A I couldn't swear that he was the driver. No, sir.

"Q Did you see him drive either one of the cars on the lot?

"A Did I see him drive? Him drive?

"Q Yes, sir.

"A No, sir. I couldn't say.

"Q Did he ever tell you that he drove either one of those cars on that lot?

"A No, sir, he never did.

"Q That's all.

"*REDIRECT EXAMINATION:*

"*BY MR. WILLIAM I. HILL:*

"Q All right, sir, Mr. Ward, he did say that it was his whiskey though.

"A Yes, sir.

"Q And it was his automobile.

"A Yes.

"Q And you didn't see anybody outside any of the cars but him.

"A He was the only one on the outside with the exception of the passenger of the other car and he was either getting into the car or out. I couldn't say.

"Q But you never saw anybody outside of the car—

"A He was the only one standing on the ground when we got there.

"Q And he was standing over there on the side of the driver talking to him. Is that correct?

"A Yes, sir.

"Q And there was nobody else in Sonny Kyle Livingston's automobile—the '65 Dodge?

"A No, sir. There wasn't anybody in it then.

"Q All right. That's all.

"*RECROSS-EXAMINATION:*

"*BY MR. ELNO A. SMITH, JR.:*

"Q And you never informed him of his Constitutional rights?

"A No, sir.

"Q Which car came in first?

"A The Plymouth. A blue Plymouth, 1965.

"Q A blue '65 Plymouth?

"A Yes.

"Q All right. What was the next one?

"A A late model Pontiac

"Q How many were in the blue 1965 Plymouth?

"A I couldn't say how many was in the car when it come in.

"Q Could it have been more than one?

"A It could have been.

"Q Now, how many came in the Pontiac?

"A Well, there was one in the car and the passenger—

"Q I mean when it drove in, Mr. Ward.

"A I couldn't tell how many was in the car.

"Q Could it have only been one?

"A There is a possibility—

"Q Or more than one?

"A I couldn't tell how many was in it.

"Q That's all.

"*REDIRECT EXAMINATION:*

"*BY MR. WILLIAM I. HILL:*

"Q Now, Mr. Ward, you said a '65 Plymouth. Could that have been a '65 Dodge?

"Q A Dodge. That's right.

"Q All right, sir. That's all."

Ward did not testify as to how he first "found" the 199 jugs of whiskey in Livingston's car. Another State witness, David Livingston, was a passenger in the '65 Dodge after arrest and en route to jail. He saw a blanket or "some kind of cloth" on top of something in the back of the car. But he did not see that the "something" was whiskey until he was at the Sheriff's headquarters.

II.

■ The motion for voir dire should have been granted. Since (1) the evidence

of Ward's seizing the whiskey made out a vital part of the State's case and (2) Livingston's admissions were inculpatory, the denial of the motion was prejudicial. White v. State, 260 Ala. 328, 70 So.2d 624; Hines v. State, 260 Ala. 668, 72 So.2d 296 (hn. 16); and Young v. State, 41 Ala.App. 284, 130 So.2d 249, require reversal.

At nisi prius when a question arises as to whether a confession is admissible or not, or has been obtained by methods which would render it inadmissible, the judge always tells the jury to retire.[1] Obviously, the reason for this precautionary is that it is almost impossible, while evidence is being taken as to the circumstances in which the confession has been obtained, to prevent the terms of the confession from coming out. At that stage the whole question is whether or not the confession should go before the jury. Therefore, while that question (which, under Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, is then one only of law) is argued, the jury are outside the courtroom. They retire therefrom so that they cannot hear the terms of a confession which, it may be held afterwards, is not admissible.

Under Duncan v. State, 278 Ala. 145, 176 So.2d 840, exclusion of evidence claimed to be the fruit of an illegal search would seem to be first determined by the judge with the jury withdrawn if requested.

Here Livingston's automobile held possible contraband and itself was subject to confiscation. Under Simpson, J.'s, view in Hines, supra, counsel for Livingston would have waived the right to thresh out the legality (i. e., admissibility) of the evidence by not demanding voir dire at the earliest moment.

■ This trial was held November 20–21, 1967. Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694,

and Jackson v. Denno, supra, are effective here.

## III.

■ Appellant makes much of the fact that the prosecution failed to prove that the "corn" whiskey in Livingston's car was whiskey for which no State tax was paid. In brief, he appended a sales sheet of the ABC Board listing corn whiskey for sale in the State dispensaries. State v. Merrill, 203 Ala. 686, 85 So. 28, now only covers "dry" counties.

We consider that the words "corn whiskey" per se and alone do not here connote illegal whiskey. Montgomery County is "wet." Hence, possession therein of State Store whiskey, whether corn, rye, bourbon, Scotch, Irish or Canadian is legal for an adult. Downey v. City of Bay Minette, 39 Ala.App. 619, 106 So.2d 32. We pretermit whether or not such possession can only be legal if the beverage is in a bottle with an ABC tax stamp on it.

The best (though not exclusive) scientific proof of the whiskey's "wildcat" heredity (in being of higher alcoholic content than any legal corn whiskey) would have been an ebulliometer test.

The State Store list for corn whiskey shows the largest bottle legally purveyed at March 4, 1966, to be one-fifth of a gallon (i. e., 25⅗ liquid ounces). Accordingly, we would stretch credulity to absurdity to disallow the State's proof so far as to say that such proof would be nullified by the bare possibility that some one could have taken 995 bottles of tax paid corn whiskey and poured them into the 199 one gallon (128 oz.) plastic jugs.

While the five-gallon law, because a felony, is strictly construed against the State (Blackwell v. State, 42 Ala.App. 246, 160 So.2d 493) as to proof of the quantity, we

---

1. The retirement of the jury is preferable to having the proceedings adjourned to another room in the courthouse such as, for example, the judge's chambers. Sending the twelve jurors out (rather than going away from them) avoids the afterthought that the court has prevented a public trial. See Carroll v. State, Ala. App., 4 Div. 656 (October 8, 1968), particularly Johnson, J., in dissent.

think that in this aspect the proof "runneth over."

## IV.

 Defense counsel took undue time in the trial trying to show that Livingston was, along with others, originally accused only of possession, a misdemeanor under T. 29, § 98.

Regardless of the out of court manoeuvres and negotiations as to copping pleas, once Livingston was true billed by the grand jury (for the felony of instant concern), there were—aside from his sooner dying—only two ordinary events of his being indicted: (1) a nol prosse with the trial judge's approval, Code 1940, T. 15, § 257; or (2) a petty jury's verdict.

However, when the usual predicate to show voluntariness of an inculpatory statement is laid, there arises a limited collateral issue. For example, had the defense brought out testimony—on voir dire—tending to show a "trade" of the less penal charge of possession of prohibited liquor instead of transporting of five gallons or more, such proof would be undoubtedly relevant both as to the credit and weight of any confession induced thereby.

Otherwise, we see no relevance in what the apprehending officers thought were the legal consequences of what they saw the defendant do. The trial judge allowed Livingston wider latitude.

## V.

As to the sufficiency of the evidence, we shall not comment thereon. This is the policy of this court where a case is remanded for new trial.

As an exception to this general rule, we would point out that ordinarily where the defendant is not actually seen in the act of transporting, the State's proof must needs exclude beyond a reasonable doubt any hypothesis of his innocence inferable from the circumstances.

Instantly three men were near two cars. Clearly human experience shows that each car was driven (and here—we think—by one of the three). The State's problem was to establish who drove the car with five gallons or more of bootleg corn whiskey.

If it was not Livingston, the appellant, who was the actual driver, then the State must show his complicity in the transporting.

## VI.

Defendant's Charge 12 is palpably erroneous since it ignores the fact that Montgomery County is wet. Possession by an adult of any quantity of tax paid liquor is lawful. This charge was rightly refused.

For the reasons given above the judgment is reversed and the cause remanded for new trial.

Reversed and Remanded.