Appellant was convicted of manslaughter in the first degree and sentenced to ten years imprisonment in the penitentiary. At arraignment and trial he was represented by retained counsel who represents him on this appeal. He pleaded not guilty. After sentence was imposed he gave notice of appeal and his sentence was suspended pending appeal and bond was set at $10,000.00.
Omitting the formal parts the indictment reads as follows:
 "The Grand Jury of said County charge that before the finding of this indictment William Henry Davis, whose name is to the Grand Jury otherwise unknown, unlawfully and with malice aforethought killed Mildred Davis by beating her with his fists, or by stomping or kicking her with his feet, or by striking her with a blunt instrument a more accurate description of said instrument being to the Grand Jury unknown, or by some other means to the Grand Jury unknown, but without premeditation or deliberation, against the peace and dignity of the State of Alabama."
Appellant and the deceased had been married for more than 20 years and two sons were born as a result of this marriage — Tim Davis, 9 years of age, and Tony Davis, 13 years of age. Appellant was 38 years of age at the time of his trial. The deceased was 47 years of age at the time of her death on August 16, 1972. She had a son by a previous marriage — Grady Dollar — who was 30 years of age at the time of appellant's trial. Their marriage was fraught with difficulties and personal problems leading to quarrels and fights and many calls to the Police Department. They both drank alcoholic beverages and after her death, the officers found 34 empty beer cans in the home.
Mr. Vann Pruitt, Assistant State Toxicologist, performed an autopsy on the body of Mrs. Davis on August 19, 1972, and his qualifications were admitted by the defense. According to Pruitt he found on the external examination that both eyes were markedly discolored or bruised and swollen and there was a bruise on the forehead. He found three areas that were extremely dark bruises, almost bluish black in color, in the area of the left breast and a reddish purple bruise on the back of the left shoulder. There were four distinct bruises, each measuring one inch in width and three inches in length about the left back of the body. He stated that palpation of the head indicated marked swelling on the top and back portion, and there were multiple contusions across the back of the hands and about the forearms. He noted multiple bruises about both upper legs.
The internal examination of the underside of the scalp revealed extensive evidence of hemorrhage about the entire area of the underside of the scalp, but the major focus and swelling seemed to be at the very back or the occipital area. Upon making entry into the cranial cavity, Pruitt found massive hemorrhage within the intracranial cavity, that is the space between the skull and brain, there was a partial laceration of the right cerebral peduncle. He also found numerous pinpoint hemorrhages throughout the temporal lobes or hemorrhages in the uppermost portions of the brain proper. Pruitt was asked his opinion as to the cause of death and stated:
 "It was a result of subdural and hemorrhage or as a result of the trauma sustained to her body."
Pruitt further testified that the injuries sustained by the deceased were not necessarily the result of a fall and that this occurred in a short period of time prior to death — maybe hours — less than 24 hours.
Robert Clark, a Police Officer of the City of Decatur, testified that he was called to appellant's home on the night of August 13, 1972, around 8:50 and had a conversation with the deceased in the presence of appellant and she told the officer *Page 815 
that her husband had beaten her up. He stated that Mrs. Davis appeared to have been beaten and that both of her eyes were black and swollen and she had bruises on her arm. He said appellant had been drinking and appeared to be under the influence of alcohol. He could not say at that time if Mrs. Davis was drinking as she was in bed.
The officer further testified that later that night the Police Department got another call to go back to appellant's home but he did not answer this call. The call was taken by Officer Joe Anders.
Police Officer Mike Harvey testified that he was called to appellant's home on August 12, 1972, that actually it was 12:02 a.m. which would be August 13th. He stated that Mrs. Davis complained in the defendant's presence that he had beaten her and she had some bruises and small cuts on her head. He and his partner tried to get her to go to the hospital but she refused at that time. He said another man and woman were present and all appeared to be drinking but that the defendant appeared to be more intoxicated than Mrs. Davis.
Police Officer Joe Anders testified that he went to appellant's house on August 13, 1972, between 9:00 and 10:00 p.m. He observed Mrs. Davis and both of her eyes were swollen shut and it was obvious that she had had a pretty good beating. They called for an ambulance and took her to Decatur General Hospital Emergency Room. Appellant was highly intoxicated and was cursing the ambulance attendant and making a nuisance of himself. The officer placed him under arrest for disorderly conduct. He gave appellant the Miranda rights and he asked him what happened. Appellant told him his wife had fallen in the bathroom but when they picked her up to take her to the ambulance she was either in the hall or right in the door to the bathroom. The officer continued to question appellant and he admitted he might have hit her or slapped her two or three times, but he didn't mean to go that far. He further stated that some other police unit carried appellant to the City jail.
Grady Dollar, son of the deceased by a previous marriage, testified that he came to the Davis' home on August 12, 1972, repaid them $80.00, had two beers with them and took the two boys to spend the night with him. He said he next talked to his mother Saturday evening and that she was drinking but was not intoxicated. That he next saw her the following evening when he picked her up at the hospital. That her eyes were black and she had bruises all over her. That he took her home with him that night and to her home the next morning as she wanted to see her boys. He further testified that on Monday afternoon when he got off work he called to see about his mother and appellant answered the phone. He asked appellant how his mother was feeling and was told she was all right. He stated that later that evening appellant called him and said his mother was lying on the floor and had been for two or three hours and had not moved or said anything and asked Dollar if he thought he should call an ambulance. He told appellant to call an ambulance at once and get her to the hospital, that something bad might be wrong with her and she might be dying.
Dollar further testified that the Decatur Hospital called him and said they were going to carry his mother to Huntsville, that this was Tuesday night and she died Wednesday evening.
Dr. Byre F. Sibrams testified that he examined Mrs. Mildred Davis on August 15, 1972, in the emergency room at Decatur General Hospital and that she was unconscious, that she had multiple bruises and abrasions on her face, left arm and left breast. That the left pupil dilated, indicating *Page 816 
a probable subdural hematoma and he made arrangements to transfer her to Dr. Bell, a neurosurgeon, at the Huntsville Hospital.
James Adkins testified that he took an ambulance to appellant's home on the night of August 13, 1972, around 9:00 p.m. and picked up Mrs. Davis and carried her to Decatur General Hospital. That appellant rode in the front seat with him and there was an attendant in the back with Mrs. Davis. That en route to the hospital Mrs. Davis called appellant a SOB and said he was going to pay for what he had done to her and that appellant turned around and told her to shut up. He further testified that he went back to the same residence on August 15, 1972, and took Mrs. Davis back to Decatur General Hospital and then carried her to Huntsville to the hospital there.
This witness further testified that on August 13, 1972, Mrs. Davis was lying on the floor in the hallway. That when he went back on August 15, she was in bed and she was unconscious.
David Reed, Police Officer with the City of Decatur, testified that on the night of August 16, 1972, he saw appellant at the Huntsville Hospital and placed him under arrest on the charge of assault with intent to murder. He said appellant was taken from a small sitting room in the hospital and put in an automobile where Detective Ward read him theMiranda rights and warnings from a printed card. Appellant stated that he understood his rights. That appellant was not threatened or coerced to get him to make a statement, nor were any promises or other inducements made to him and he was offered no rewards of any kind. According to Officer Reed appellant told them that he may have slapped his wife on the shoulder and that he might have slapped her on the side of her face.
Appellant gave Lt. E.C. Bowman, Police Officers Doyle Ward and David Reed written permission to search his home. Ward and Reed conducted the search and removed from appellant's home a claw hammer, a pair of pants, a telephone directory, an undershirt, two bedsheets and a pillowcase. These items were taken to the Toxicology Department in Huntsville for examination.
It was stipulated by the defense and the prosecution that human blood of Group AB was found on the undershirt of appellant and on the bed sheet and the blood of the deceased was Group AB. The claw hammer and the pair of pants contained no human blood. The other items contained human blood but the type was not determined.
Officer Reed took photographs of the interior of the house which were introduced in evidence without objections. He described bloodstains on the floor, on the bottom frame of the door, and a wash rag in the bathroom.
Mr. Harry Collier testified that he rented a house to the Davis family and that he went there the day before Mrs. Davis died. He found a broken tank on the commode and replaced it. He said appellant told him that he raised the lid up and it fell apart and broke.
The two young sons of the deceased testified for their father. They both stated that they heard their mother fall in the hall and their father called the ambulance. They went to where their mother was on the floor and their father was standing over her. They further stated they were not in the house all the time and did not know what happened when they were not present.
Appellant testified in his behalf. He stated he and his wife drank beer and at the same time she was taking medicine. He said she fell on the coffee table and broke all the legs and she fell in the bathroom. He claimed he looked after his wife *Page 817 
the way a loving husband should. That he stayed off from work from the first time she fell until she passed away.
On cross-examination he denied that he hit, shoved, pushed or slapped his wife at any time from Saturday, August 12, 1972, until the time she was carried to the hospital on August 15, and died the next day. He denied that he had ever hit or slapped his wife but admitted when they were in the ambulance going to the hospital the first time, his wife called him an SOB for what he had done to her. He denied telling Officer Joe Anders that he might have hit and slapped her but he didn't mean to go that far. Upon being further pressed about his wife telling the officers that he beat her he finally admitted that he slapped her. In his own words, "Well, just like I said, the first time she fell that night and then later I slapped her because she was cussing me."
He further stated that his wife killed herself by stumbling and staggering and falling around the house. He was asked if his sister, Louise Collman, didn't tell the police officers in his presence that he had beat his wife and he replied, "I will say that I didn't hear it."
Appellant further denied that when Grady Dollar called to ask about his mother he told him that she had been lying on the floor for two or three hours and had not moved. He said that was Dollar's statement — not his.
On rebuttal the State called Police Officer Mike Harvey who testified that he went to the home of the defendant and the deceased on August 12, 1972, right before midnight and between 1:00 and 2:00 a.m., on August 13, 1972, in the presence of the defendant and his wife, appellant's sister, Louise Collman, made the statement that appellant and his wife had a fight earlier in the evening, before they arrived, and that appellant beat his wife.
There was no motion to exclude the State's evidence on the ground the State failed to make out a prima facie case. There was a request for the affirmative charge which was refused. A motion for a new trial was made and it was overruled and denied.
In a prosecution for murder it is permissible for the State to prove that the defendant entertained feelings of hostility toward the deceased, and for this purpose, the fact, but not the details or particulars, of recent former difficulties may be shown. Jones v. State, 17 Ala. App. 394, 85 So. 830.
In Judge McElroy's "Law of Evidence in Alabama, 2nd Ed. Vol. 1, page 107" it is stated:
 "In a series of opinions by the Court of Appeals, written by Judge Harwood, and apparently approved by the Supreme Court's denial of certiorari, the rule now seems to be established that the extent to which the facts (whether called details or some other name) of a former difficulty may be proved is committed in measurable degree to the discretion of the trial court." (Citing cases)
In this case the details of former difficulties between appellant and his deceased wife were limited to the bare fact that appellant had beat his wife, (a fact which he admitted) and the details thereof were not shown. Appellant's counsel withdrew his objections to the events which began on Saturday, August 12, to August 15, 1972, when she was transferred from the hospital in Decatur to the hospital in Huntsville where she remained unconscious until her death on the evening of August 16, 1972.
The acts, declarations, and demeanor of an accused, before or after the offense, whether a part of the res gestae or not, are admissible against him, but unless a part of the res gestae are not admissible for him. Smarr v. State, 260 Ala. 30, *Page 818 68 So.2d 6; Espey v. State, 270 Ala. 669, 120 So.2d 904.
If there is a reasonable inference to prove the existence of the corpus delicti, the Court should submit to the jury for consideration the question of the sufficiency and the weight of the evidence tending to support that inference. Hines v. State,260 Ala. 668, 72 So.2d 296.
Circumstantial evidence may afford satisfactory proof of the corpus delicti in a murder prosecution, and, if facts are presented from which the jury may reasonably infer the crime has been committed, the question must be submitted to the jury, and other evidence tending to implicate the defendant is thereby rendered admissible. Johnson v. State, 247 Ala. 271,24 So.2d 17; Phillips v. State, 248 Ala. 510, 28 So.2d 542;Harnage v. State, 49 Ala. App. 563, 274 So.2d 333.
Incriminating statements made to officers in the presence of the defendant are not inadmissible as being hearsay. Hall v.State, 11 Ala. App. 95, 65 So. 427; Payne v. State, 261 Ala. 397, 74 So.2d 630.
A decision on a motion for a new trial rests largely within the sound discretion of the trial court, and, in reviewing that decision this Court will indulge every presumption in favor of the correctness thereof. Moore v. State, 52 Ala. App. 179,290 So.2d 246.
We have carefully searched the record for errors injuriously affecting the substantial rights of appellant and have found none.
The judgment of conviction is affirmed.
AFFIRMED.
TYSON, DeCARLO and BOOKOUT, JJ., concur.