THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v.
GEORGE FOULDS, PLAINTIFF IN ERROR.

Argued May 21, 1941—Decided October 20, 1941.

For the defendant in error, *Andrew J. Duch,* Prosecutor of the Pleas of Mercer County.

For the plaintiff in error, *Andrew M. Cella* and *David Kelsey.*

The opinion of the court was delivered by

BROGAN, CHIEF JUSTICE. By this writ of error George Foulds, convicted of murder in the first degree, without

recommendation, seeks a reversal of that judgment on strict bill of exceptions.

The argument on this appeal is developed under three main headings. It is said that the trial court committed reversible error, first:

(a) In receiving in evidence Fould's confession over objection.

(b) In admitting in evidence a statement or confession allegedly made but not signed by Foulds.

(c) In the admission of the signed confession which was made at a time when Foulds was held on a lesser charge than murder.

Second:

(a) Because the court denied defendant's motion to disqualify the jury when first they reported their finding, but instead directed that they retire and endeavor to reach a verdict.

(b) Because the court "reinstructed" the jury before it retired the second time, and

(c) Because the verdict finally announced by the jury was erroneous and faulty.

Third:

(a) Because the court against defendant's objection permitted a state's witness to fire a gun in the courtroom.

(b) Because the court refused to grant a motion for mistrial.

(c) Because a certain passage in the court's charge to the jury was, plaintiff in error contends, prejudicial.

Before entering upon any exposition of the law of the case the facts should be set out. The plaintiff in error was indicted for the murder of Samuel Cominsky, done in the attempted perpetration of a robbery. *R. S.* 2:138-1; 2:138-2. Cominsky died as a result of a bullet wound inflicted by the defendant, Foulds. The decedent had been the employer of the defendant who left his service, went elsewhere to obtain better employment, but, being unsuccessful, returned to the City of Trenton. It was the custom of the decedent, as Foulds knew, to go to a Trenton bank each Friday, obtain money for the payroll of his employees and return to his place of business.

Foulds knew the license number of the decedent's car and after Cominsky left the bank on Friday, December 27th, 1940, Foulds accosted him and inquired whether he might return to work for him. Cominsky said, "All right." Foulds then asked Cominsky if he would mind taking him out to Cominsky's shop, since he was going that way, to which Cominsky replied, "No, he had to stop at the post office." Cominsky drove away. Foulds, on foot, followed him to the post office. At the time Foulds was armed having taken two revolvers from his home that morning.

When Cominsky left the post office and returned to his car Foulds again asked for a ride and Cominsky assented. They proceeded to East Trenton and enroute Foulds "pulled a gun on him [Cominsky] and told him to turn right on Fillmore * * *." Cominsky resisted and wrested the gun from Foulds who thereupon attempted to leave the car and while so doing pulled out the other revolver and fired a shot which entered Cominsky's abdomen. Cominsky died the following day from the wound. Foulds immediately after the shooting hurried home, deposited the revolver in a cedar chest, changed his clothes and proceeded to a railroad yard in Trenton to board a freight train to Pennsylvania, when he was captured by the police.

This narrative is set out in the detailed confession which Foulds signed.

Turning now to the argument, it is said that the confession was not voluntary and, further, that even though voluntary when made it should not have been admitted in evidence in any event, because, when made it was at the time when the defendant was in custody for atrocious assault and battery with intent to kill and attempted robbery. The theory urged is that the victim, having later died, that fact rendered the statement previously made involuntary and therefore inadmissible. There is no merit in either contention. The indispensable prerequisite to the admission of a confession in evidence is that the statement of the prisoner be made voluntarily, that is, that it be not induced by fear or by hope of favor in the prosecution that is to follow, held out by someone in authority. The record shows that when the admission of

the confession in evidence was challenged, the learned trial judge, realizing that the state had the burden of proving that the confession was in fact voluntary, excused the jury in order that there might be a preliminary inquiry into whether or not there was any basis for the objection of the plaintiff in error. The witnesses, in this phase of the case, including the defendant, were searchingly examined to enable the court to determine before ruling on the admissibility of the confession whether any inducement either by fear or promise was shown to have been involved in the making of the confession. That the court was correct in this procedure is not open to debate.

The issue was one of both law and fact; of law, that is whether that which was said, no matter what, by the state's representative at the time the confession was made, amounted to an inducement which instilled fear or hope of favor or benefit in the mind of the defendant so far as his trial was concerned. This is a question for the court alone. Of fact, that is whether that which the prisoner says was the inducement was in effect done or said or promised by the person to whom or in whose presence the confession was made. This is a matter for the jury. The court, after hearing the testimony on this issue, admitted the confession in evidence and in charging the jury was most careful to safeguard the rights of the defendant. The jury were instructed that "such confession should be disregarded" by them unless they were satisfied that it had been made voluntarily; that they might "disregard" any part of the confession which the defendant, if they believed him, said he had not made, and that it was their prerogative to ascribe to the confession the weight and importance that they thought it merited under all the circumstances. These instructions were advantageous to the defendant. Compare *State* v. *Compo,* 108 *N. J. L.* 499, 504. The admission of the confession in evidence, there being plenary evidence to support the act of the court in this particular, may not be assigned for error. *Cf. State* v. *Yarrow,* 104 *Id.* 512.

Concerning the second point argued as error under this heading—that the court received in evidence a statement attributed to the defendant but which he refused to sign—it is enough to say that an unsigned statement or confession

made by the accused, and as here authenticated by competent testimony that it was voluntarily made by him, may be received in evidence. *Cf. The State* v. *Donato,* 106 *N. J. L.* 397; 22 *C. J. S. Criminal Law,* § 833.

The argument under the third subdivision of this heading —that because the signed confession was made before the victim died therefore the confession might not be used at his trial for murder—is clearly lacking in merit. We are not aware of any authority to support this proposition and none is cited in the brief of the plaintiff in error. The confession was found by the court to have been made voluntarily. The jury could find with propriety that this confession was the defendant's own uninspired account of the attempted robbery and the shooting. The fact that the victim of the shooting later died does not in any respect weaken the defendant's voluntary confession or render it inadmissible. *Cf. State* v. *Silverio,* 79 *N. J. L.* 482. Shortly before the confession was made the prisoner was brought into the presence of Mr. Cominsky, in the hospital, who at the time was actually receiving a blood transfusion. The testimony is that the defendant then and there admitted his act and said that he was sorry for what he had done. Later he made and signed the confession. The following day, Cominsky having died in the interim, Foulds was told about his death, that he was about to be questioned again and that the charge against him was murder. He did not repudiate his former statement. He was advised that he might answer questions or not, as he saw fit, but whatever he did say "must be a voluntary statement which will be taken down in writing and used at your trial. Do you understand that?" He answered in the affirmative and proceeded to make a statement as follows:

"*Q.* In view of the charge of murder against you, do you wish to make a further statement? *A.* I want to say that I killed that man. It is my fault, I want to get what is coming to me, to be sent to the electric chair and get what is coming to me. I tell you now I don't want any hard feelings. I gave you all the information I could last night. I tell you right now that I am not going to sign any paper.

"*Q*. Is there any correction or addition you wish to make to the statement you made last night? *A*. No, sir, * * *.*"*

It is impossible to find any merit in the argument that these confessions or statements should not have been received in evidence. The signed confession was voluntarily made. There was no deception used in obtaining it. The statement which defendant refused to sign, when informed that Mr. Cominsky had died, corroborated the first confession. In brief, he stated that all the information he had to give about the crime had been given and that he had no corrections to make in the statement previously made. It was not error to have admitted both statements in evidence.

Under point two (reasons for reversal numbers 6, 8 and 9), the court's refusal to disqualify the jury is assigned for error. At that posture of the proceeding this was the situation: The jury, having retired to consider their verdict, returned to the courtroom and the foreman announced that the jury had agreed and the verdict was announced by him in these words: "We have agreed to—the jury indicts Mr. George Foulds for murder in the first degree." The court directed the jury to remain in their places and that they refrain from conferring with anyone. Then the court conferred with counsel after which the court addressed the jury as follows: "The court has heard what the foreman of the jury said. The court does not accept that as a verdict in this case. The court instructs the jury at this time that there are four possible verdicts; you may bring in, of course, only one of those four: (1) Not guilty; (2) murder in the first degree; (3) murder in the first degree with a recommendation of imprisonment for life at hard labor, and (4) murder in the second degree. You will retire and deliberate in accordance with these instructions and all other instructions which the court has given you heretofore and attempt to reach a verdict." Whereupon the jury retired. Counsel for plaintiff in error then advanced a motion to the court saying that the jury having rendered a verdict "which was improper in substance and in form" are disqualified from further acting as jurors and should be dismissed and that "any verdict hereafter rendered is illegal, improper and without justification." This motion was denied and an exception was noted on the record.

Later the jury returned to the courtroom and announced that they had agreed upon a verdict and that their foreman would speak for them. Whereupon he announced, "We, the jury, find the defendant guilty of murder in the first degree." The jury was then polled and, as the roll was called, the first juror (the foreman), in reply to the question: "How do you find?" answered, "Guilty." Whereupon the clerk said, "You say you find the defendant guilty of murder in the first degree; is that your verdict?" to which the juror answered, "I do." Whereupon defendant's counsel entered objection saying "the verdict of the first juror was guilty but of no degree." The court thereupon directed the clerk to ask the foreman again what the verdict of the jury was.

The clerk: "Mr. Foreman, how say you?" and the foreman replied, "I find the defendant guilty of murder in the first degree." The court directed the clerk to poll the balance of the jury in compliance with the request therefor. The clerk thereupon called each juror and each in turn answered: "Guilty of murder in the first degree," at the end of which the clerk added an additional question: "And so say you all?" to which the jury replied: "We do." Whereupon the jury was dismissed.

From this the argument is advanced that the jury did not find the defendant guilty of murder in any degree. But this contention finds no support in the record. The jury, by their foreman's statement, by the poll of each juror separately and by their announcement in common, found the defendant guilty of murder in the first degree. Nor does the argument for plaintiff in error find any support in the case of *State* v. *Turco*, 98 *N. J. L.* 61, which is cited in the brief. There, the jury was discharged after it had rendered an insufficient verdict which, of course, could not be cured after the jury had been disbanded. Here, the fact that the first pronouncement of the jury was irregular and even insufficient in form was no bar to the trial judge doing exactly as was done, that is, instruct the jury that its finding under the evidence should be one of the four alternative verdicts which he outlined. The learned trial judge, with a proper regard for the rights of the defendant, was most careful that the finding of each of the

jurors be ascertained to eliminate any uncertainty. The jury's finding thus was revealed beyond all doubt. The statement in the brief for plaintiff in error that the clerk put the words of the verdict into the mouth of the foreman is simply not the fact. The judge retained control of the situation and his course of conduct was sensible and just and in complete consonance with our cases. The course pursued by the court has had the approval of our appellate courts and those of other jurisdictions for generations. *Cf. State* v. *Gonneion,* 68 *N. J. L.* 429, and cases cited therein. ·

Under the third point (which includes reasons for reversal numbers 2, 5, 7 and 10) the fact that the court permitted a witness for the state, an expert on firearms, to discharge a pistol three times in demonstration of his opinion, in the presence of the jury, is challenged as error; also the court's refusal to grant a motion for a mistrial upon the statement of counsel for defendant that the jurors, or one of them, "expressed a feeling because of the defendant's wife and baby being in the doorway of the corridor outside of the courtroom during the trial," and further that in instructing the jury the court said something which the plaintiff in error claims was prejudicial and improper.

These matters will be considered in order. As to the first— the state contended that the bullet which caused the death of Cominsky was fired from a distance very close to his body, a matter of inches. The defendant maintained that he was some distance away, in fact out of the decedent's car, when he fired the shot.

The court permitted the demonstration by the expert for the express purpose of supporting the witness' "stated conviction that he can judge from the marks on the cloth [coat of deceased] the distance from which a firearm was fired." Three shots were fired by the witness, one from a distance of an inch and a half from the coat; the second at a distance of two feet, and the third at a distance of one foot. This was done against the objection of plaintiff in error. Experimentation in general in the presence of a jury and the extent that it should be indulged is usually a matter for the discretion of the trial court. The brief of the plaintiff in error

says that it was error to allow the demonstration and that the state's attorney insisted upon the experiment only "to prejudice the minds of the jurors." This is the extent of the argument. Counsel says the demonstration permitted amounted to error, without more. No authority is cited. Manifestly demonstrations or experiments may be justified on the ground that they tend to enlighten the jury on an important point. But caution and prudence should govern in each instance, depending upon the circumstances and the character of the demonstration. It is impossible to lay down a formula that will govern in every case. The most that can be said in support of plaintiff in error is that the state could have made sufficient proof of this point by the oral testimony of its expert witness and that a demonstration was not necessary. We cannot say that there was an abuse of discretion in allowing the experiment in question because in the light of the testimony of the defendant himself we cannot conceive that the demonstration brought manifest harm or injury to the defendant. Compare *State* v. *Harris,* 1 *N. J. Mis. R.* 526; 1 *Morton's Criminal Evidence* (11th *ed.*) 605.

In regard to the second point under this heading—as to whether there is any merit to the matter of a juror or several jurors being made "nervous" because the defendant's wife and baby stood in the doorway of the courtroom looking in at the trial—the record shows this situation: At the beginning of the trial defense counsel moved that all the witnesses in the case be excluded from the courtroom. The state's attorney consented on condition that the exclusion included the defense witnesses as well as those of the state. Defense counsel then said: "Every witness will be excluded, even the wife of the defendant." Thereafter, while the court was in recess, the court and counsel having retired to the judge's chambers, the court said to counsel: "Some woman member of the jury communicated to the court attendant * * * that she and one or two other women members of the jury were made nervous by reason of the fact that the defendant's wife was standing at the door (of the courtroom) with her baby in her arms." Thereupon defense counsel moved for a mistrial on

the ground that such juror had "expressed a feeling because the defendant's wife and baby being in the doorway of the corridor outside the courtroom," saying that he felt that "the mind or minds of those jurors are no doubt prejudiced and therefore a fair and impartial trial could not be had." The court denied the motion for a mistrial and properly so. The defendant's wife and the other witnesses were not excluded from the courtroom by any action of the trial court. The exclusion was stipulated between respective counsel. But clearly it was at the request of counsel for plaintiff in error. The point requires no discussion.

Finally it is said that the court made statements to the jury which were "prejudicial and improper." No argument is made on this point and none could be. When the court had finished its charge to the jury—and defense counsel had taken a general exception thereto—the court addressed a final word to the jury, saying that they were to consider the case from the evidence and the evidence alone, and not from any bias, passion or prejudice, and concluded by saying, "I also wish to charge you that you are not to consider this case from any sympathy as well as from any bias, passion or prejudice." It is conceded that this language was entirely appropriate, but plaintiff in error says that because the court had concluded its charge to the jury and had asked defense counsel if any exceptions were to be noted and immediately thereafter said that which has just been stated—that it was error. We fail to see any basis for complaint and counsel points out none. No point is made that the verdict was contrary to the weight of the evidence. In the light of the testimony in the case no such argument could well be made.

The judgment under review should be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, COLIE, DEAR, WELLS, WOLFSKEIL, RAFFERTY, HAGUE, THOMPSON, JJ. 16.

*For reversal*—None.