99 So.2d 431

**Mary CHAPPELLE**

v.

**STATE of Alabama.**

6 Div. 135.

Supreme Court of Alabama.

Dec. 19, 1957.

Arthur Parker, Birmingham, for appellant.

John Patterson, Atty. Gen., Edmon L. Rinehart, Asst. Atty. Gen., for the State.

STAKELY, Justice.

■ This is an appeal from the Circuit Court of the Tenth Judicial Circuit of Alabama. The defendant, Mary Chappelle, was indicted for murder in the first degree. Upon a plea of not guilty, trial was had and the jury returned a verdict of guilty of murder in the second degree, fixing her punishment at 30 years in the penitentiary. The defendant did not file brief in this court, but that is not essential to our consideration of an appeal in a criminal case. Walker v. State, 265 Ala. 233, 90 So.2d 221; Johnson v. State, 257 Ala. 644, 60 So.2d 818.

■ Right of appeal in a criminal case is one of substance and § 389, Title 15, Code of 1940, imposes upon the court a duty to search the record for errors. Walker v. State, supra, citing Wesson v. State, 238 Ala. 399, 191 So. 249; Payne v. State, 261 Ala. 397, 74 So.2d 630.

From the defendant's motion for a new trial arises the question of the sufficiency of the evidence to sustain the verdict of the jury. The record discloses the following: On the night of October 27, 1956, the defendant, Mary Chappelle, escorted by one Jimmie Dee Shine, also known as Slim, went to a honky tonk in the vicinity of Blue Creek, Jefferson County, Alabama. The exact time of their arrival is uncertain and there is dispute in the testimony as to their course of conduct after their arrival. However, there was testimony that upon reaching the establishment of Oliver Wells and Emma Lee Forney, Slim shook hands with certain men and women present; and upon his shaking the hands of the women, the defendant produced a knife and laid it along Slim's neck, calling him "sneaky." There was also question as to whether the defendant engaged in argument with persons other than Slim. The witnesses agreed that Slim Shine and Mary Chappelle had some argument in Oliver Wells' kitchen; that she produced a long knife; that Oliver Wells stepped between the defendant and Shine, and that thereafter she reached around Wells and stabbed Shine once in the chest. There is no testimony, except that of the defendant herself, that Shine made any threatening moves at the time he was stabbed.

The defendant's nephew testified that he had seen and heard the deceased mistreat and threaten the defendant on the evening of the stabbing. He also testified that the deceased usually carried a knife on his person.

The defendant's version of the stabbing varies somewhat from that of the other witnesses present. She testified that the deceased Shine who lived in a small house behind the house which the defendant occupied, but he occasionally occupied her house for the night, had threatened and physically abused her when she expressed an unwillingness to accompany him to Oliver Wells' establishment. She further testified that when they arrived at Wells' place, she knew none of the people and said she wanted to leave; that Shine attempted to ply her with liquor and for some purpose took her to a private room where there was a couch and a bed. She repulsed his advances, and not liking the other company present, attempted to leave and persuade her companion to do likewise so that he would drive her car. They argued. He threw her on the floor in the front room where the juke box was playing, pulled her into the kitchen and threatened her. She, in fear, seized a knife from the kitchen table and hit him with it, dropped it on the table and left, not knowing that she had killed the deceased.

After careful examination of the evidence, we are of the opinion that it was sufficient to sustain the verdict of the jury. No witness but the defendant testified to menacing gestures, words or actions on the part of the deceased at the time of the stabbing which might support her claim of self defense. All the witnesses to the stabbing, save the defendant, testified that Oliver Wells, the houseman, was standing between the deceased and the defendant at the time of the stabbing and that the deceased was standing still at the time, thus tending to contradict the claim of the defendant that the deceased drew a switch-blade knife and came toward her.

The jury viewed the witnesses and heard their testimony. They were entitled to weigh the testimony and determine the questions of fact surrounding the killing. Sufficient evidence was presented to support the findings of the jury. We are further unable to find that such verdict is indicative of prejudice, bias or other improper motive. Miles v. State, 257 Ala. 450, 59 So.2d 676; Sims v. State, 31 Ala.App. 247, 14 So.2d 742.

Nor did the court err in admitting Exhibit No. 3 for the State, a photograph of the body of the deceased showing his wound as well as his face. McKee v. State, 253 Ala. 235, 44 So.2d 781; Hines v. State, 260 Ala. 668, 72 So.2d 296.

The court properly allowed Oliver Wells to testify as to whether the deceased or the defendant appeared mad just prior to the fatal stabbing. Long v. Seigel, 177 Ala. 338, 58 So. 380; Daniell v. State, 37 Ala.App. 559, 73 So.2d 370.

Nor did the court err in refusing to allow impeachment of witness Oliver Wells because of a prior conviction of assault and battery with a weapon. Such offense under § 34, Title 14, Code of 1940, is a misdemeanor. A conviction for assault and battery is not proper subject for impeachment of a witness as it is not considered an offense involving moral turpitude per se. Johnson v. State, 15 Ala.App. 298, 73 So. 210, certiorari denied Ex Parte Johnson, 198 Ala. 692, 73 So. 1000. The crime of assault and battery with a weapon is of the same nature and a conviction for such offense is not proper subject for impeachment, since it does not involve moral turpitude per se.

The court properly sustained the State's objection to testimony by the defendant of details of former threats and difficulties between the deceased and the defendant. The fact of the existence of former recent difficulties and threats between the deceased and the defendant is admissible after some evidence in support

**40**

of a claim of self defense has been presented. However, the details of such difficulties were properly excluded. Wright v. State, 252 Ala. 46, 39 So.2d 395; Alabama Digest, Homicide ⟿189.

 The appellant, upon motion for new trial, complains that the separation of juror A. E. Kelso for a portion of time, estimated at from thirty seconds to one and one-half minutes, constituted reversible error or ground for mistrial on motion by the defendant. The record shows by the unrebutted testimony of juror Kelso, in the proceedings on motion for new trial, that no one spoke to Kelso and that he spoke to no one during the brief separation, except for the bailiff who came to fetch him from the rest room. The affidavits of the attorney for the defendant and of Carlie Jones, defendant's sister, merely stated that in the corridor numerous people were milling about, including some state witnesses, and that Kelso passed in close proximity to them on his way back to the court room.

When a separation of the jury occurs, without the consent of the defendant, during the course of a prosecution for murder, upon proper motion by the defense for mistrial or a new trial, the burden is upon the state to show clearly that no injury resulted from the separation. Section 97(1), Title 30, Code of 1940; Nelson v. State, 253 Ala. 246, 43 So.2d 892; Wright v. State, 38 Ala.App. 64, 79 So.2d 66, certiorari denied 262 Ala. 420, 79 So.2d 74. This burden was clearly met in the present case, in that no communication between juror Kelso and persons other than the bailiff transpired. The same situation was presented in Duke v. State, 257 Ala. 339, 58 So.2d 764, where a juror remained in the lavatory for one minute after the other eleven jurors had returned to the court room. The juror returned in the company of a deputy sheriff who testified that the juror spoke to no one and that no one spoke to him. The court said in this case that such separation, although putting the burden of proof on the state to show clearly that the juror was not subject to contacts or influences, the state clearly met such burden and overcame it and that no new trial was warranted.

The written requested charges which were refused were refused without error.

This court, consistent with its duty, has carefully considered the entire record and finds no error to reverse.

Affirmed.

LIVINGSTON, C. J., and LAWSON, MERRILL and COLEMAN, JJ., concur.