122 So.2d 738

**Cecil TINER**

v.

**STATE of Alabama.**

**4 Div. 949.**

Supreme Court of Alabama.

July 14, 1960.

Rehearing Denied Sept. 15, 1960.

Simpson, Goodwyn and Merrill, JJ., dissented.

J. Hubert Farmer, Dothan, and Jack W. Smith, Geneva, for appellant.

John Patterson, Atty. Gen., and Geo. D. Mentz, Asst. Atty. Gen., for the State.

COLEMAN, Justice.

In Geneva County, appellant was indicted, tried, convicted, and sentenced to death by electrocution, for murder in the first degree of James Cuthbert Woodham by shooting him with a gun or pistol. At the time of the shooting Woodham was sheriff of that county. He was shot

through the chest about 8:00 p. m. August 5, 1957, and died on the 8th day of the same month at 5:30 a. m.

The evidence for the state tended to show that a two-tone Buick automobile occupied by two men was in the town of Hartford, in Geneva County, early in the evening of August 5, 1957; that the automobile stopped at the hospital in Hartford and the two men entered the hospital and carried away an iron safe containing narcotics; and that defendant was one of the men who removed the safe. Next morning the safe was found in a field a few miles west of Hartford. It had been opened and most of the narcotics removed. Some narcotics were left at the place where the safe was found. On the night the safe was taken, a two-tone Buick occupied by two men passed a filling station in the town of Geneva where the sheriff had stopped and was talking. The deceased got in his car and pursued the Buick. A few miles south of Geneva the sheriff's car overtook the Buick and both cars stopped with the sheriff's car a short distance ahead of the Buick. Deceased got out of his car, met the driver of the Buick between the cars, and both came back to the driver's side of the Buick and had a conversation. The sheriff searched the trunk of the Buick, then went around to right side of that car. Mrs. Ganey, a witness for the state, on the porch of her home about 75 yards from the car, heard a shot and went back into her house. Later she heard more shots. She did not identify defendant. The Buick drove off. The sheriff was found shot and taken to the hospital where he died. A car seat, cushion, and some narcotics were found where deceased was shot. Defendant was arrested the following morning at a filling station three and a half miles south of Pensacola. When arrested, defendant had in his mouth two fifty dollar bills with two small white tablets folded in the bills. On cross-examination defendant admitted that the tablets were morphine. A two-tone Buick car with Texas license plate was found on highway twelve miles from place of arrest. No one was present at the car. Defendant, on cross-examination admitted owning a Buick automobile introduced in evidence and shown to the jury.

The confessions of defendant introduced by the state were to effect that after taking the safe, defendant and companion drove out on a dirt road outside Hartford where they removed some narcotics from safe and took a "shot"; then they drove through Geneva and were stopped by a car pulling ahead of them; the sheriff looked in trunk of their car and went to its right side; defendant helped sheriff pull the back seat over on front seat; when sheriff started to pull the loose seat out of the car, he found a paper sack with some narcotics in it which had been on the front seat of the Buick; as the sheriff started to pull sack and seat out of the car, defendant pulled out his gun and shot the sheriff one time; as the sheriff fell he drug car seat and sack with him; sheriff started shooting and defendant ran to left of Buick; defendant fired three more shots; sheriff started towards his car and defendant ran to Buick and drove off after picking up his companion; defendant and companion drove south into Florida; they drove on dirt roads and threw the gun over a wooden bridge at unknown spot; later defendant and companion left the Buick and took with them the one remaining bottle of morphine which was later left on top of filling station where defendant was apprehended. Defendant further said that the 1956 Buick which had been found was the car used in all this and was his car.

Only witness for defendant was himself. We quote from his brief: "His testimony was to the effect that he took some kind of narcotics in Pensacola, Florida about 11 a. m., August 5, 1957; that during the years for the past thirteen years he had taken all kinds of narcotics, including much cocaine; that when he had been without * * * narcotics for several hours, his memory was hazy, and he developed hallucinations; that he did not know where he was or what he did from late afternoon August 5th, until the next morning, when

he was arrested at a filling station near Pensacola, Florida; that when he 'needed' a shot of dope badly, he was likely to take too much, and go into a stupor for several hours.

"He further testified that when he was a small child, his father and mother separated, and he went to live with his grandmother * * * in Dallas, Texas; that when he was about twelve years of age he was stricken with tuberculosis of the bone; that he spent most of some fifteen months in a Methodist Hospital in Dallas; and during a considerable part of this time, his leg was in traction and that he suffered severe pains on account of such traction; that during this time he was given injections of morphine for this pain sometimes several times a day; that he learned what was being given to him by the nurses; * * *.

"That after his discharge from the hospital, he had a craving for the narcotics he had been receiving; that he began then the use of narcotics of various kinds; that this use continued to varying degree from then until his arrest for the killing of Sheriff Woodham; that he had served two sentences for burglary, each for breaking into drugstores and stealing narcotics; that during one sentence he took a six months Bible course in an effort to break the habit; that he got off it for awhile, but then got back on it.

"On cross-examination Appellant denied killing the sheriff, saying that he just knew that he did not wish to hurt anybody; but testified further that he stole money with which to purchase narcotics, principally on the blackmarket; that at the time of his arrest, he was using large *quanities* (sic, quantities) that it was costing him One Hundred Dollars to Two Hundred Dollars per day to keep himself supplied on the black market."

### Motions to Quash.

Defendant filed a motion to quash the indictment and a motion to quash the venire. The latter motion rested on the following ground:

"It affirmatively appears that the names of a large number of citizens who possess the qualifications required by law of jurors have been intentionally and unlawfully omitted from the jury roll and intentionally and unlawfully left out of the jury box from which roll and out of which box the names of the jurors to try this defendant on said charges and at said time, were so taken and so drawn as aforesaid."

The motion to quash the indictment raised the same objection as to the grand jurors who found the indictment.

To each of defendant's motions, the state filed a demurrer and motion to strike. The trial court sustained the state's demurrers and motions to strike and overruled defendant's motions to quash.

The state raised the objections that the motion to quash the indictment came too late after the plea of not guilty and that the attack on the indictment should have been made by plea in abatement. We pretermit consideration of those insistences, however, because the objection to the filling of the jury box raised by the motion to quash the indictment is the same objection raised by the motion to quash the venire, and the sufficiency of the averments of the latter motion must be determined.

Appellant relies on Cook v. State, 32 Ala. App. 54, 21 So.2d 446, and Inter-Ocean Casualty Co. v. Banks, 32 Ala.App. 225, 23 So.2d 874, to show error in the trial court's refusal to grant either of the motions to quash in the case at bar.

The record on file in Cook v. State, supra, discloses that Ground 3 of the motion to quash the indictment in that case alleges in detail, on a page and a half of transcript paper, the facts which constituted the failure to select the venire, from which the grand jury in that case was drawn, in

accord with the statutes providing for the selection and empaneling of juries.

In Inter-Ocean Casualty Co. v. Banks, supra, the motion to quash the venire covers two and a half transcript pages of the record in that case, and alleges in detail that the venire was drawn from a box which contained names from only one of the former judicial divisions of the county. The facts alleged clearly established the fraud charged, ·the pleading did not state merely conclusions.

The sufficiency of the averments of a motion to quash the indictment and a motion to quash the venire on the ground of fraud in selecting or drawing the grand jury and petit jury was before this court in Wimbush v. State, 237 Ala. 153, 186 So. 145. The averments of the motions are not set out in the opinion. In the original record on that appeal, it appears that both motions in that case contained, among others, the following statement of supporting grounds:

"3. For that the jurors, who have been summoned this week, are not impartial jurors in that male citizens who belong to that class of trade known as working trade, such as farmers, miners, independent carpenters, and independent businesses, and those who are employed by the United States Government on relief projects, and those who are unemployed are systematically kept from the jury roll and out of the jury box in Jefferson County.

"*    *    *    *    *    *

"5. For that the jurors summoned to serve this week are not free from bias or prejudice because of the fact that they are composed principally of those of the rich and highest in station to the discrimination of male citizens who are otherwise qualified but who are poor and in humble circumstances.

"6. For that male citizens in Jefferson County, who ·are in moderate or humble circumstances, have been systematically kept from being summoned for jury duty this week, and have been so kept from serving on the jury during the past several weeks.

"7. For that the number of citizens of Jefferson County put into the jury box by the jury board shows on its face rank discrimination, because of the fact that so few citizens of Jefferson County are thus included on the jury roll or in the jury box.

"*    *    *    *    *    *

"That the said jury commissioner represented to the citizens of Jefferson County that the jurors in said box in Jefferson County were the qualified citizens of Jefferson County for jury service, and that this representation was false in fact, for that certain classes of qualified citizens were systematically and intentionally and fraudulently left out of said box. Therefore, this representation by the jury board that said citizens were all qualified citizens for jury service was false, and known to be false by said jury board or commission and intentionally misrepresented to the citizens of the County and the State of Alabama. The defendant relying upon said representation has been defrauded by said board or commission; he has been denied due process of law; he has been denied his other constitutional rights, and he therefore wants the jury venire summoned to serve this week quashed, as the jurors summoned to serve were impanelled from this box which was filled through the fraud of said jury commission of Jefferson County, Alabama."

Wimbush v. State, supra, was tried on an indictment which charged murder in the first degree by shooting with a gun or pistol, as does the indictment in the case at bar. The sentence in the Wimbush case was death by electrocution and the judgment was affirmed by this court.

There the objections to indictment and to the venire were grounded on fraud in

selection of the grand jury and petit jury in that the jury commission intentionally omitted certain classes of persons from the jury roll. One ground of objection was " * * * the fact that so few citizens * * * are thus included on the jury roll * * *." In holding that the trial court did not err in refusing to quash that venire this court said:

"The motion to quash the venire drawn and summoned for defendant's trial wholly fails, in its averment of fact,—disregarding as valueless the defendant's opinion and unwarranted conclusions—to show or aver fraud on the part of the Jury Commission in filling the jury box, or in drawing or summoning the jurors. The Court, therefore, committed no error in refusing, upon the showing made, to quash the venire of jurors drawn and summoned for the trial of the defendant. Bell v. Terry et al., supra." Wimbush v. State, supra, 237 Ala. at page 155, 186 So. at page 147.

The facts stated in the motion to quash the venire in the instant case are certainly not more specific or certain than were the facts stated in the motion in the Wimbush case. If anything, the facts here averred are less specific. The phrase, "a large number of citizens" has no definite or certain meaning. To say that a number is large, is merely to express a conclusion arrived at by comparison with another number, real or imaginary. Moreover, to state that a large number of names have been intentionally omitted or left off the jury roll is to state a conclusion and is not a statement of the facts on which that conclusion is based.

The language of the instant motion to quash is substantially like certain language in the opinion in Inter-Ocean Casualty Co. v. Banks, supra. As there employed, the language expresses a conclusion of law in that case arising from and supported by the facts there alleged, and the language is not intended to be and is not an example of a proper pleading of facts necessary to be averred to raise the objection of fraud in drawing the jury.

The rule as to pleading fraud, which was applied in Wimbush v. State, supra, has been expressed as follows:

" * * * Fraud is a conclusion of law from facts stated and proved. When it is pleaded, at law, or in equity, the facts out of which it is supposed to arise must be stated: a mere general averment, without such facts, is not sufficient. The court cannot, on such averment, pronounce judgment. Kinder v. Macy, 7 Cal. 206; Catchings v. Manlove, 39 Miss. [655] 667; Clay v. Dennis, 3 Ala. 375; Bryan v. Spruill, 4 Jones, Eq. 27 [57 N.C. 27]; Story's Eq.Pl. § 251 a. A demurrer to such pleading is not a confession of the fraud; for a demurrer confesses only the matters of fact which are well pleaded, and not conclusions or inferences of law or fact.—1 Dan.Ch. Pr. 545." Flewellen v. Crane, 58 Ala. 627, 629.

See also: National Surety Co. v. Julian, 227 Ala. 472, 150 So. 474; Richardson v. Curlee, 229 Ala. 505, 158 So. 189; Terrell v. Marion County, 250 Ala. 235, 34 So.2d 160; Ala. Digest, Pleading, ☞ 8(15). Measured by the same rule, the motions to quash now before us are insufficient for failure to aver facts to show fraud in filling the jury box, and the trial court did not err in sustaining the demurrers to, and granting the motions to strike, the motions to quash the indictment and the venire.

#### Motion for Change of Venue.

Appellant filed a motion for change of venue as provided for in Title 15, § 267, Code 1940. In support of the motion, appellant offered the testimony of eleven witnesses, two of whom were manager and owner of different radio stations in Dothan, two were television station news directors in Montgomery and Dothan, one was a newspaper reporter who covered the case,

two were managers of separate newspapers published in Geneva County, one was in drug store business, two were not identified as to occupation, and one was photographer for the Hartford News Journal.

These witnesses testified that accounts of and concerning the facts of this case were broadcast on radio and television, particularly during the week immediately after the shooting; that later newscasts related to return of indictment, arraignment, and setting the case for trial, although earlier events were repeated; that newspaper front-page articles with pictures were also published in daily and weekly papers circulated in Geneva County and were carried on Associated Press and United Press wire services; that the newspaper attention given this case "was about the same as a similar case," although the witness did not know any other case occurring in Geneva County which had received as much publicity. Copies of the television newscasts and newspaper clippings concerning this case were received in evidence as exhibits and are here before us. Thirty to fifty copies of a magazine containing a story about the case had been sold at a drug store in Geneva. At a small cafe in Slocomb, operated by a former deputy sheriff, then a policeman, a picture of appellant and Hable had been hung on the wall. An unknown party later wrote the word "Killers" on the picture, and the cafe operator refused to allow a photographer to photograph the picture.

Only one of appellant's witnesses was asked to express an opinion as to whether or not appellant could get a fair trial in Geneva County. He replied: "Would be difficult to say. I think there is enough people in this county that would give him a fair trial."

When appellant rested on the motion, the state offered fourteen affidavits made by people from various walks of life and from different parts of Geneva County. The affiants state that immediately after the shooting, they heard many people in Geneva County discuss the case and the news reports concerning it, that during the last several weeks affiants have heard but little discussion of the case and what they recently heard related only to the date of trial, that affiants have not heard any statements indicating hostility or prejudice against appellant or that any person had a preconceived opinion as to the guilt or innocence of appellant, and that in the opinion of affiants appellant would receive a fair and impartial trial by a jury in Geneva County.

Appellant objected to the affidavits offered by the state "on the grounds that we don't have a right to cross examine those witnesses." The court overruled the objection.

In holding such objection not well taken, this court has said:

"The supposed constitutional objection can not be sustained to such counter affidavits when offered by the state. It is only in 'criminal prosecutions' that the right of the accused to be confronted by his witnesses is secured. This has reference only to the trial proper, or those proceedings which follow between the commencement of the trial and the verdict of acquittal or conviction. It manifestly has never been supposed to extend to the preliminary proceedings in the grand jury room upon which the indictment is founded, or other collateral proceedings. It is akin to the right to be heard by counsel, to demand the nature and cause of the accusation, to have compulsory process for witnesses, to be exempt from giving evidence against one's self, and to have a speedy trial by an impartial jury; which are gauranties enumerated in the same clause of the constitution, and must be interpreted by the principle of *noscitur a sociis*. Const. 1875, art. I, § 7. All these are rights secured during the trial of the defendant, not on the investigation of issues collateral, or preliminary

to his prosecution." Hussey v. State, 87 Ala. 121, 126, 6 So. 420, 421.

Appellant's objection to the state's affidavits was correctly overruled in the instant case.

■ On motion for change of venue in a criminal case, defendant has the burden of showing to the reasonable satisfaction of the court that a fair and impartial trial cannot be had and an unbiased verdict cannot reasonably be expected. Denton v. State, 263 Ala. 311, 82 So.2d 406; Campbell v. State, 257 Ala. 322, 58 So.2d 623; Maund v. State, 254 Ala. 452, 48 So.2d 553; Ala. Digest, Criminal Law, ⊜134(1).

■ Evidence offered by defendant on the motion shows there was widespread public interest in the case particularly in the period immediately following the shooting, that deceased was popular and well liked in Geneva County, that appellant was a drug addict and had been guilty of committing previous crimes, that the bizarre elements of the case gave it high news value, and that it was reported accordingly but did not receive more or different treatment by news reporting media than is ordinarily accorded similar cases with the same news value.

"So long as we have newspapers we may expect to have through them the report of crimes, and it is not to be unexpected that, when a homicide is committed and discovered under circumstances like the present—even if the defendant's account of the entire matter is the truth—the newspapers of the community, answering the public interest, will furnish the defendant·with at least some material upon which to base an application similar to the one under discussion. * * *." Godau v. State, 179 Ala. 27, 36, 60 So. 908, 910.

The foregoing applies also to radio and television news reporting.

The accounts of this case so reported are, in the main, factual and detailed. We do not, however, discover from the reports before us any inflammatory statements, or other matter, on which we can receive a fair and impartial trial in Geneva County. Moreover, the affidavits offered by the state contradict such a conclusion. The motion for change of venue was overruled without error.

base a conclusion that appellant could not

### Voluntariness of Confession.

Defendant argues that under the circumstances shown by the testimony of investigator John Williams, the confession of defendant could not have been free and voluntary, that defendant made the confession thinking he would thereby obtain an injection of narcotics, that an addict will do anything to get such an injection, and, therefore, the confession should not have been admitted. In short, defendant argues that the circumstances under which the confessions were made show that defendant lacked mental capacity at that time because of his addiction and the fact that he had been deprived of narcotics for approximately two days.

The evidence does not show that any promise was made to defendant to give him an injection, and on cross-examination he denied saying he would sign the confession if given a "shot."

With respect to intoxication as rendering a confession inadmissible, this court said:

"* * * It does not follow necessarily, that because the party was much intoxicated his reason was so far dethroned as to disable him from comprehending the effect of his admissions, or from giving a true account of the occurence to which they had reference. * * *." Eskridge v. State, 25 Ala. 30, 33.

In discussing the effect of mental incapacity on the admissibility of a confession, this court said:

"* * * A person may be partially insane and still be competent to testify or make a confession. Insanity is a relative and broad term. A paranoiac is insane, but competent to testify, we doubt not, in many instances." Redwine v. State, 258 Ala. 196, 199, 61 So.2d 724, 727.

█ So in the instant case, where the evidence fails to show that at the time of making the purported confession, defendant did not have mental capacity to know and remember the matters and happenings he then narrated, the confession was not inadmissible because defendant was addicted to narcotics and had been deprived of them for opproximately 48 hours, although the facts of such addiction and deprivation were properly to be considered by the jury in determining the credibility and weight to be accorded the testimony tending to prove the confession.

### Unsigned Confession.

On direct examination, the state proved by investigator, John Williams, that on August 8, in the Houston County jail, in the presence of the witness and the Sheriff of Houston County, defendant made a statement describing defendant's actions on the night of the fatal shooting. Predicate was laid to show that the statement was voluntary and the witness then related the statement which incriminated the defendant.

The witness further testified that defendant repeated the statement which was taken down in writing by the witness the second time defendant told it; that witness then asked defendant if he wanted to read it, whereupon defendant said "* * * you just read it to me," and that witness then read the statement to defendant and asked defendant to sign it; that witness asked defendant was the statement true and defendant said it was true; that defendant did not sign the statement but said he would sign it if "we would give him a shot," but witness told defendant "we

wouldn't give him anything, wasn't promising him anything," and that if defendant did not want to sign the statement that was all right. The writing was handed to the solicitor and received in evidence over objection of defendant. The solicitor read the statement to the jury.

Insistences are that the court erred in admitting the writing because it was not signed by defendant and also because the writing was inadmissable under the rule in Acklen's Executor v. Hickman, 63 Ala. 494, which governs admission of a memorandum used to refresh the recollection of a witness.

Several decisions of this court hold that confessions voluntarily made, which have been reduced to writing and signed by the defendant, were properly admitted in evidence against him. Shelton v. State, 217 Ala. 465, 117 So. 8; Bell v. State, 238 Ala. 586, 192 So. 507; Dyer v. State, 241 Ala. 679, 4 So.2d 311; Johnson v. State, 242 Ala. 278, 5 So.2d 632; Brown v. State, 247 Ala. 288, 24 So.2d 223; Thomas v. State, 249 Ala. 358, 31 So.2d 71; Hines v. State, 260 Ala. 668, 72 So.2d 296. This court has held that proof of both an oral confession and also a written, signed confession, relating to the same offense, were admitted in evidence without error. Thomas v. State, supra. We have not, however, been cited to or found any case in this jurisdiction which squarely decides whether or not a written confession may be received over defendant's objection where defendant has not signed the writing. In Gordon v. State, 252 Ala. 492, 493, 41 So.2d 610, 611, is found a statement that: "It is true that a written confession requires no signature by the defendant, * * *," but this court in that case affirmed the Court of Appeals which held that although defendant had signed the original, an unsigned carbon copy of a confession was erroneously received in evidence in the absence of an accounting for nonproduction of the original signed statement. Gordon v. State, 34 Ala.App. 278, 41 So.2d 608.

The cases, however, appear to establish the rule that, in the absence of a statute to the contrary, a voluntary oral confession accurately reduced to writing by a third person and read by or to the accused and then by him freely acknowledged to be correct is admissible in evidence against the defendant, although he never signed the writing. See State v. Cleveland, 6 N.J. 316, 78 A.2d 560, which is the subject of annotation at 23 A.L.R.2d 907; and also: People v. Varela, 405 Ill. 236, 90 N.E.2d 631; State v. Saltzman, 241 Iowa 1373, 44 N.W.2d 24; State v. Donato, 106 N.J.L. 397, 148 A. 776; State v. Foulds, 127 N.J. L. 336, 23 A.2d 895; State v. Lustberg, 11 N.J.Misc. 51, 164 A. 703; People v. Whalen, 249 App.Div. 890, 292 N.Y.S. 570; State v. Haworth, 24 Utah 398, 68 P. 155; State v. Demareste, 41 La.Ann. 617, 6 So. 136; State v. Harris, 74 Wash. 60, 132 P. 735.

We have found no case deciding to the contrary, but,

"In State v. Strain, 84 Ohio App. 229, 82 N.E.2d 109, 110 (Ct. of App. 1948), the accused, after he was captured by police officers, was questioned and his statement taken down in shorthand and later transcribed. In disposing of a motion in reference to the statement so secured, the court said: 'The transcript in question is not a written confession signed by the defendant and is therefore not competent as evidence." State v. Cleveland, supra, 78 A.2d 567, 23 A.L.R.2d 918.

It is also said that:

"In Texas a confession made while the accused is under arrest or in confinement may not, by virtue of express statutory provision, be used except under certain conditions, one of which is that if it is in writing it must be signed by the accused. Therefore, the admission in evidence of an unsigned confession made by one under arrest or in confinement constitutes reversible error. * * *." 23 A.L.R.2d 930, 931.

We know of no such statute in Alabama.

Probably the best statement of the reasons for admitting a voluntary unsigned confession is as follows:

"* * * First, then, to consider this question as it is governed by the rules and principles of the common law. Confessions of guilt made by a prisoner to any person at any moment of time, and at any place, subsequent to the perpetration of the crime and previous to his examination before the magistrate, are at common law received in evidence as the highest and most satisfactory proof of guilt, because it is fairly presumed that no man would make such a confession against himself, if the facts confessed were not true (1). It may however be said, that this rule only applies to confession by *parol*, and not to confession, as in the present case, reduced into *writing* and afterwards admitted by *parol* to be true; but surely, if what a man says, though not reduced into writing, may be given in evidence against him, *a fortiori* what he says, when reduced into writing, is admissible; for the fact confessed being rendered less doubtful by being reduced into writing, it is of course intitled to greater credit; and it would be absurd to say, that an instrument is invalidated by a circumstance from which it derives additional strength and authenticity: and for this reason it is clear, that the present confession having been taken by a magistrate under a judicial examination, can be no objection to receiving it in evidence, for it gains still greater credit in proportion to the solemnity under which it was made. The conclusion from these observations is, that at common law every fact which may be proved against a prisoner by *parol testimony*, may also, when reduced into writing and admitted by the prisoner, be proved by *the*

*paper* containing the written evidence of such fact." Rex v. Lambe, 2 Leach CL 625, 629, 630.

Appellant argues that inasmuch as the witness Williams testified orally from his own recollection as to the statements made by defendant, the writing containing the same matter was not admissible under the rule stated in Acklen's Executor v. Hickman, supra, to the effect that where a witness refreshes his memory from a memorandum made by himself or known by him to be true, and the witness can then testify to the facts as matter of independent recollection, the memorandum is not made evidence unless the opposing party calls for it. If the written confession were admissible only as a memorandum used to refresh recollection defendant's argument would be sound, but the writing here in question is not admissible merely as such a memorandum. The writing is admissible because it is a statement made by defendant against his own interest. When he heard it read and approved it, he adopted it as his own statement and it is admissible for that reason, and not because it is a memorandum used to refresh recollection. " * * * All that the accused voluntarily wrote or said which is material to the charge, is competent against him because it is his own admission and against his own interest. * * *" Elkins v. State, 250 Ala. 672, 674, 35 So.2d 693, 695. Under the authorities, the writing admitted in evidence against Tiner was not inadmissible because it was not signed by him or because the witness Williams was able, from independent recollection, to testify as to the matters stated in the writing. The trial court did not err in admitting the unsigned confession.

### Excluded Part of Document.

After the unsigned confession, together with an added memorandum hereinafter mentioned, had been received in evidence and read to the jury, defendant cross-examined the witness John Williams. On redirect examination of that witness the following appears in the transcript:

"Mr. Boswell: Now if the Court please, we would like to withdraw the last part that wasn't a part of the statement here.

"Mr. Jack Smith: We object to that.

"The Court: Wait just a minute. Yes, I will let you withdraw that last statement there. It seems like that is a certificate of Mr. Williams.

"Mr. Farmer: If your Honor, please, may I say just one word?

"The Court: Yes, sir. Now I'll do this, Mr. Farmer, if you want to bring this witness back and ask him about that.

"Mr. Farmer: I want to say, first, the statement is introduced and has been read to the jury with this.

"The Court: Has that part of it been read to the jury?

"Mr. Boswell: Yes, sir.

"The Court: Let me have the statement. Gentlemen, the State of Alabama has moved the Court to be allowed to withdraw the following, which is appended to the written statement by Mr. Williams, and which Mr. Williams claimed was read over to the defendant. 'This statement was made in the presence of Sheriff Alvin Davis, Jr. and Investigator John H. Williams, however, Tiner would not sign it.' Now that part of it is withdrawn from you and is excluded and you will not consider it.

"Mr. Boswell: We would like for the reporter to cut it off.

"The Court: Yes, I'll allow you to separate it from the other part of it.

"Mr. Farmer: If your Honor, please, before you do that, may I recall the witness?

"The Court: Yes, sir.

"Re-Cross Examination

"By Mr. Farmer:

"Q. Mr. Williams, read those four lines in writing at the bottom there? A. This statement was made in the presence of * * *

"Q. You may read it to yourself if you wish.

"Q. All right. Now that is in your handwriting, is it? A. Yes, sir.

"Q. That was written at the time you say the defendant made the statement you testified about, is that correct? A. Yes, sir.

"Q. And that speaks the truth? A. Yes, sir.

"Now we request and ask the Court to let that go in with the statement quoting the defendant.

"The Court: When you ask the Court that, do you mean that you want to introduce it or not?

"Mr. Farmer: I understood that it had already been introduced, your Honor.

"The Court: I am withdrawing it already. I am allowing it to be withdrawn and excluding it from the consideration of the jury, but now we are not precluding you from introducing it if you want to. That's left up to you. Of course, it hasn't got your time yet. You can consider it if you want to, Mr. Farmer.

"Mr. Farmer: The defendant would like to introduce that part of the statement that he says he signed there to this effect: 'However, Tiner would not sign it.'

"The Court: That he wrote there?

"Mr. Farmer: That he wrote there himself: 'However, Tiner would not sign it.'

"Mr. Boswell: We object to that, just introducing part of it.

"The Court: Overrule. Let it go in. The other is already in.

"Mr. Boswell: No, sir. The whole writing or none of it.

"The Court: You are introducing that part that says 'Tiner would not sign it?'

"Mr. Farmer: 'However, Tiner would not sign it', yes, sir.

"Mr. Boswell: We object to it unless it is the whole statement.

"The Court: I sustain the objection to that. The witness has already testified that Tiner said he wouldn't sign it.

"Mr. Jack Smith: If your Honor please, he has already testified to the substance of that whole statement.

"The Court: Yes, sir. I am withdrawing that part of it. Sustain the objection.

"Mr. Boswell: We might add we have no objection if the defense counsel wants to introduce the whole statement. That's up to him.

"The Court: I don't want to be putting the defendant on the spot, whether he is going to introduce it or not going to introduce it. The State has no right to do that, gentlemen, and I'll exclude that. All right, sustain the objection to introducing those words.

"Mr. A. A. Smith: May we ask then, if he is not going to introduce it, that the court reporter take a knife and sever from the paper those words that we have withdrawn, and retain in the possession of the court reporter that part we have withdrawn.

"The Court: I want it to be retained in the possession of the court reporter so in the event he needs it it will be

available. It becomes a part of the record although it is not in evidence."

It thus appears that after the purported written confession had been read back to defendant by the witness Williams, who had written down the purported confession, Williams then added on the same sheet of paper on which the purported confession had been written, four lines, to wit: "This statement was made in the presence of Sheriff Alvin Davis, Jr. and Investigator John H. Williams, however, Tiner would not sign it." The entire written document, including the last four lines, had been read to the jury and admitted in evidence. The state then moved to withdraw the last four lines. Defendant objected and asked the witness Williams whether the four lines were in his handwriting and whether the four lines spoke the truth. Williams answered both inquiries in the affirmative. The court then stated that the four lines had been withdrawn and excluded from consideration of the jury, thus overruling defendant's objection to the state's motion to withdraw and exclude.

As hereafter shown this action of the court was error.

The defendant then offered in evidence that part of the four lines which recites: "* * * however, Tiner would not sign it." The state objected and the court sustained the state's objection. This also was error.

Thereafter, the last four lines were physically severed from the remainder of the document which was admitted in evidence as we have discussed in the preceding part of this opinion. For convenience, we sometimes hereinafter refer to said last four lines as the memorandum.

It does not appear that the memorandum was read to defendant and approved by him. For that reason, the memorandum was not a part of the written confession, although it is clear that the words "however, Tiner would not sign it," do constitute a shorthand rendition of something defendant said

or did or did not do after the preceding part of the writing had been read to him.

The state's witness who made the memorandum testified that he wrote it himself at the time the transaction recorded therein occurred and that the memorandum spoke the truth. The defendant then sought to introduce a part only of the memorandum.

The state, at the trial, appeared to concede that defendant had a right to introduce all the memorandum. That right defendant had, whether the memorandum be considered as one used by witness on direct to refresh his recollection, Fletcher v. State, 12 Ala.App. 216, 67 So. 631; Acklen's Executor v. Hickman, supra; or as a memorandum appearing on a document produced by and coming from the possession of a witness called by the adverse party. Union Iron Works Co. v. Union Naval Stores Co., 157 Ala. 645, 47 So. 652.

The state had introduced all the document in evidence, generally and without limitation of purpose, and then, over objection of defendant, withdrew part of the document. Defendant then sought to place in evidence a part of that which had been withdrawn, but on objection of the state, defendant was not permitted to do so.

Bumpass v. Webb, 1 Stew. 19, holds that where defendant introduced answer and exhibits in evidence, plaintiff had the right to read all or any part thereof. Easly v. Dye, 14 Ala. 158, holds that where defendant introduced judgment and execution thereon, plaintiff had right to adduce entire record of the suit to show effect of the judgment and execution. In Zimmerman v. Huber, 29 Ala. 379, defendant made evidence of several of plaintiff's letters and the holding was that "This, under the rule, makes evidence of the entire letters; * * * If received to charge him, they should also be heard to discharge him." In Union Iron Works Co. v. Union Naval Stores Co., supra, where plaintiff introduced certain notes showing plaintiff's retention of title to the suit property, this

court held that the endorsements on the back of the notes were in evidence to show transfer of title out of plaintiff and to defeat plaintiff's claim to the property.

■ The general rule that a document offered in evidence must be taken in its entirety, Union Iron Works Co. v. Union Naval Stores Co., supra, must apply with equal force to both parties. In the case at bar, the state had been permitted, over defendant's objection, to place in evidence a part only of the document. Yet, when defendant sought to place in evidence a part only of the remainder of the document, the state's objection was sustained. If the state is to be permitted to offer a part only, then an evenhanded application of the rule must accord defendant the same right. If the court was correct in sustaining objection when defendant sought to place in evidence a part only of the document, then the court was in error in overruling objection when the state was permitted to withdraw part and leave in evidence a part only of the same document. The court erred in sustaining objection to defendant's offer of the words, "however, Tiner would not sign it."

In Belt Automobile Indemnity Ass'n v. Ensley Transfer & Supply Co., 211 Ala. 84, 88, 99 So. 787, 791, with respect to parts of a letter, this court said:

"As original evidence, what plaintiff stated to defendant company in his letter to them on July 27, 1920, after the damage judgment had been rendered against plaintiff, was not admissible. But, defendant having brought out portions of the letter on the cross-examination of plaintiff, it was competent on rebuttal to show all that was said in the letter about the matter under discussion."

In the instant case, if defendant had been permitted to introduce that part of the memorandum to which objection was sustained, the state then, under the holding in Belt Automobile Indemnity Ass'n v. Ensley

Transfer & Supply Co., supra, could have introduced the remainder of the memorandum.

■ The rule of the cases which we have cited is that when one party introduces into evidence part of a document the opposing party has the right to introduce into evidence all or a part of the remainder of the document.

■ We are not unmindful of our duty to give full and considered recognition to the provisions of the rule of "Error without Injury," Supreme Court Rule 45, Code 1940, Tit. 7 Appendix, but an equal duty demands that we employ commensurate diligence to protect and safeguard the rights of parties litigant. Salvadori v. State, 33 Ala.App. 372, 33 So.2d ,752. "Right of appeal in a criminal case is one of substance and § 389, Title 15, Code of 1940, imposes upon the court a duty to search the record for errors." Chappelle v. State, 267 Ala. 37, 38, 99 So.2d '431, 433. We are convinced that we would do violence to the spirit and intent of Rule 45 if we apply it to the case at bar.

It is true that state's witness John Williams did testify orally that defendant would not sign the purported written confession. That oral testimony was given, however, prior to the procedure which resulted in admitting the written confession and excluding the part of the memorandum which stated that defendant would not sign the confession. The court instructed the jury that the memorandum " * * * is withdrawn from you and is excluded and you will not consider it." Defendant thereafter earnestly pressed the court to permit a favorable part of the written memorandum to go to the jury as evidence, but to no avail.

Defendant denied making the confession and denied saying he would sign it if given a shot. An issue in the case was whether or not defendant did make and approve the written confession. The written memorandum made by the witness Williams,

who also wrote the remainder of the document, was material evidence tending to qualify or shed light on what took place at that time. The fact that defendant did not sign the confession tends to support his contention that he did not make it, and defendant was entitled to have the jury consider competent evidence in support of his contention.

Human experience generally accords to a contemporaneous written memorial of a transaction greater deference than that usually given to an oral account of the same event. Illustrations are the statute of frauds, attestation statutes, and recording acts. In the case at bar, notwithstanding the fact that the state had proved defendant's confession by oral testimony, the state saw fit to place before the jury the written account of the same transaction. One reason for admitting an unsigned confession has been said to be that "* · * * the fact confessed being rendered less doubtful by being reduced into writing, it is of course intitled to greater credit * * *." Rex v. Lambe, supra.

The oral testimony could not effectively supply the same probative force as the excluded writing. The best evidence rule rests on the fact that the document is a more reliable, complete, and accurate source of information as to its contents and meaning than the oral statement of any witness, and the defendant was entitled to have submitted to the jury that part of the document which was favorable to him as well as that part which was against him.

After an examination of the entire cause, it appears that the exclusion from the jury of competent evidence probably injuriously affected substantial rights of defendant in this case where the death penalty was imposed.

### Sentence.

██ On November 8, 1957, defendant was sentenced to be executed on December 6, 1957. . The day of execution thus set was less than thirty days from the date of sentence. Title 15, § 343, Code 1940, requires that the day set for execution be "not less than thirty * * * days from the date of sentence." The day set for execution was not a day allowed by law. Defendant argues that this is reversible error.

In Gray v. State, 55 Ala. 86, the trial court had failed properly to pronounce a sentence of death. On appeal, this court remanded for proper sentence. So here, the error in setting the day for execution is not error to reverse, and would merely require remanding for proper sentence, or, under Title 15, § 391, Code 1940, that this court specify a day for the execution of this sentence.

Reversed and Remanded.

LIVINGSTON, C. J., and LAWSON and STAKELY, JJ., concur.

SIMPSON, GOODWYN and MERRILL, JJ., dissent.

SIMPSON, Justice (dissenting).

A majority of the Court has pronounced reversible error in the ruling of the trial court denying to defendant the right to introduce in evidence a part of a so-called document introduced in part by the State.

The State had introduced a paper purporting to be a transcription in writing of the confession made by defendant to witness Williams. At the end of this transcription there was an endorsement or certificate in the handwriting of the witness in these words: "This statement was made in the presence of Alvin Davis, Jr., and investigator John Williams, however, Tiner would not sign it." The solicitor moved to withdraw the quoted endorsement. The trial court granted the motion, whereupon, after some inquiry to the witness, counsel for defendant asked that that part of the endorsement reading: "however, Tiner would not sign it", be introduced along with the confession appearing on the same paper. The solicitor objected to the introduction of

these words without the rest of the endorsement. The court sustained this objection, holding that all of the endorsement and not merely a part of it should be introduced.

It is the conclusion of the majority that it was error to allow the State to withdraw the quoted endorsement and, further, that it was error to require defendant to introduce the entire endorsement rather than merely the words: "however, Tiner would not sign it". With this I cannot agree. In the first place, the endorsement was no part of the document proper, viz., the confession. It was an appendage, in the words of the witness, and following what purported to be a transcription of the incriminatory statement attributed to the defendant. Certainly, it was no part of the purported confession, and had it been allowed to remain in evidence it would have rendered the document or transcript inadmissable and subjected the cause to reversal for introducing hearsay or self-serving evidence. The solicitor, evidently realizing this, properly moved that the endorsement be deleted, and the trial court properly withdrew it. This being so, there was no right in defendant to introduce a part of the objectionable whole. There is no field of operation for the rule governing the right of one party to offer in evidence the whole of a document where the other party has introduced a part of it. Since the entire endorsement was improperly introduced in the first place and the objectionable part properly excluded on motion of the solicitor, it cannot be said that by removing the objectionable matter the State was in effect allowed to introduce only a part of the confession document and that in fairness defendant should have been allowed to introduce all or a part of the document which had not been introduced.

Nevertheless, the trial court offered to permit the defendant to introduce the entire endorsement, and this the defendant refused to do, insisting upon only a part of it. Had the trial court acceded to defendant's request and deleted the first part of the memorandum of the witness, the remaining words would have been meaningless, not a complete sentence but a hanging clause.

In the second place, it is difficult to see how defendant could have been prejudiced in any event. Williams, himself, testified orally that defendant refused to sign the confession, and there is no evidence that he did not so refuse. The more important question for the jury, upon testimony of the witnesses pro and con, was whether or not defendant made the confession at all. To repeat, it was indisputably shown that he would not and did not sign the purported transcript made by Williams.

No possible error is shown to have occurred and I, therefore, respectfully dissent.

GOODWYN and MERRILL, JJ., concur in the foregoing.